**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

PHILIP G. PETERSON, in his capacity as Successor Advisor to the Peterson Family Stewardship Fund,

     *Plaintiff*,

v.

CHRISTIAN COMMUNITY FOUNDATION, INC. d/b/a WaterStone, a Colorado nonprofit corporation,

     *Defendant.*

---

### COMPLAINT AND JURY DEMAND

---

Plaintiff Philip G. Peterson ("Plaintiff"), in his capacity as Successor Advisor to the Peterson Family Stewardship Fund (the "Fund"), for his Complaint against Defendant Christian Community Foundation, Inc. d/b/a WaterStone ("WaterStone" or "Defendant"), alleges as follows:

### INTRODUCTION

1.    This action concerns WaterStone's administration of the Peterson Family Stewardship Fund, a donor-advised fund holding more than $21 million in charitable assets. WaterStone is a Colorado-based Christian nonprofit that sponsors donor-advised funds. Donor-advised funds are vehicles through which donors contribute assets, receive immediate tax deductions, and subsequently recommend grants to qualified charities of their choice. WaterStone markets itself to Christian

donors as a faith-based alternative to secular fund sponsors, stating its mission as
"honor[ing] God through the transformational power of giving." In exchange for
holding and investing charitable assets, WaterStone commits to honor the grant
recommendations of fund advisors; it holds itself out to the public as a donor's
"charitable bank account."

2.    Plaintiff Philip Peterson is the designated successor advisor to the
Peterson Family Stewardship Fund, which his father established with WaterStone
in 2005 to support Christian ministries. Since 2024, WaterStone has refused to
communicate with Mr. Peterson, revoked his access to account information, declined
to process his grant recommendations and has failed to make charitable
distributions from the Fund. The year 2024 was the first time in the Fund's
nineteen-year history that no grants were made to any charity.

3.    WaterStone's CEO told Mr. Peterson never to contact WaterStone
again. WaterStone has refused to provide Mr. Peterson with the governing
documents or any accounting of the Fund's assets. WaterStone's stated position is
that it owes *no* duties to its fund advisors and may disregard them entirely. If
correct, WaterStone may indefinitely retain millions in tax-advantaged charitable
assets while ignoring the donor's designated advisor and making no distributions to
charity. Mr. Peterson seeks declaratory and injunctive relief establishing his rights
as advisor and, ultimately, compelling WaterStone to transfer the Fund to a sponsor
that will honor its charitable purposes.

## PARTIES

4.      Plaintiff Philip Peterson is an individual resident and citizen of Mission Hills, Kansas. He brings this action in his capacity as the contractual Advisor to the Peterson Family Stewardship Fund, a donor-advised fund maintained by WaterStone. Plaintiff has authority to assert the claims made herein on behalf of the Fund and in furtherance of the donor's intent and advisory rights.

5.      Defendant Christian Community Foundation, Inc. d/b/a WaterStone ("WaterStone") is a Colorado nonprofit corporation with its principal office at 10807 New Allegiance Drive, Colorado Springs, Colorado 80921.

## JURISDICTION AND VENUE

6.      This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between Plaintiff, a citizen of the State of Kansas, and Defendant, a citizen of the State of Colorado, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.      Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant resides in this District and a substantial part of the events or omissions giving rise to these claims occurred in this District.

## FACTUAL ALLEGATIONS

8.      WaterStone is a national sponsoring organization of donor-advised funds and related charitable giving services. Its 2023 Form 990 states that

WaterStone's mission is to "provide *excellence in personalized charitable giving services* and education resources" (emphasis added).

9.      As a sponsor of donor-advised funds, WaterStone solicits and receives charitable contributions from donors, holds the contributed assets, and promises to administer those assets consistent with the donor's charitable purpose after giving good-faith consideration to the recommendations of the Fund's advisor.

10.      WaterStone's website explains that a WaterStone donor-advised fund "operates like a charitable bank account. You can make a contribution of cash, appreciated assets, or other non-traditional gifts into your Giving Fund and receive an immediate charitable deduction. Once the fund is established, you can recommend grants to the charities of your choice on your timeline":

> ## How it Works
>
> A Giving Fund operates like a charitable bank account. You can make a contribution of cash, appreciated assets, or other non-traditional gifts into your Giving Fund and receive an immediate charitable deduction. Once the fund is established, you can recommend grants to the charities of your choice on your timeline.

*See* WaterStone: Giving Fund, *available at* https://perma.cc/DA42-GJYY.

11.      WaterStone's website asserts that it exists to "[h]onor[] God through the transformational power of giving." It also claims to "[s]erv[e] Givers at the intersection of faith and finance."  WaterStone states it "[b]uild[s] the Kingdom by transforming assets into living water." And it claims its "[v]alues" are "Christ-centered: Love, Integrity, Service." *See* WaterStone: About, *available at* https://perma.cc/GTQ3-BCMS.

4

12.    The Peterson Family Stewardship Fund (the "Fund") is a donor-advised fund sponsored and administered by WaterStone.

13.    As of December 31, 2023, the Fund's balance was $21,071,102.

14.    The Fund was created in 2005 by Plaintiff's father, Gordon J. Peterson.

15.    On December 1, 2005, Mr. Peterson executed the Application and Purpose Statement attached hereto as **Exhibit 1**, reflecting his evangelical mission and charitable objectives in establishing the Fund.

16.    On November 1, 2017, Mr. Peterson duly designated his wife, Ruth Peterson, and Plaintiff Philip Peterson as "co-equal advisors" of the Fund, as shown in **Exhibit 2** hereto.

17.    Waterstone acknowledged and agreed that Plaintiff Philip Peterson became a donor advisor to the Fund on  November 7, 2017 and November 13, 2017.

18.    On Ruth Peterson's death in 2021, Plaintiff Philip Peterson became the sole advisor of the Fund pursuant to the DAF agreement. Mr. Peterson remains the only individual entitled to exercise the advisory rights associated with the Fund.

19.    From 2017 to 2023, WaterStone worked with Mr. Peterson as the contractual advisor to the Fund and uniformly approved and administered his grant recommendations.

20.    Despite this, in March 2024, WaterStone removed Plaintiff's access to the Fund's account information and online portal, in an effort to deny Plaintiff his advisory role.

21. WaterStone also ceased all communication with Plaintiff, including removing him from a general public email update list as well as Living Water, their quarterly magazine for donors and advisors

22. Around that same time in 2024, Plaintiff had pending with WaterStone a grant request of approximately $1 million for Operation Mobilization, a Christian missionary organization that focuses on evangelism and discipleship worldwide. WaterStone ignored the grant request and has never made the requested donation, despite having approved prior grants from the Fund to Operation Mobilization.

23. Never before had a request to WaterStone to make a grant from the Fund ever been refused or left pending indefinitely.

24. WaterStone made no charitable donations at all from the Fund in 2024, for the first time since the Fund was established in 2005. While WaterStone distributed no money in furtherance of the Fund's evangelical mission in 2024, upon information and belief, in 2024 WaterStone officers received pay increases and bonuses.

25. In 2025, WaterStone officials stated that, because of their unfounded negative feelings toward Plaintiff, WaterStone would not accept Plaintiff's recommendations for grants and refused to have any communication with him.

26.    WaterStone has otherwise failed and refused to fulfill its duties to Plaintiff and the Fund, including but not limited to, by the following acts and omissions:

a.    Failing to timely process and honor eligible grant recommendations duly submitted by Plaintiff as the Fund's advisor.

b.    Imposing undisclosed and unauthorized restrictions and conditions on grant recommendations, including delaying or denying recommendations that met the Fund's Purpose Statement, such as the Operation Mobilization grant recommendation that fell squarely within the Fund's express purpose and established giving history.

c.    Failing to provide timely, accurate statements and accountings of the Fund's assets, transactions, fees, and performance.

d.    Failing to respond to reasonable requests of Plaintiff for information and documents (including the Fund's contract and related documents) regarding the Fund and the uses of the Fund.

e.    Retaliating against and disregarding Plaintiff's inquiries and requests for information regarding the Fund and its administration out of personal animosity of WaterStone officials toward Plaintiff.

f.    Refusing even to communicate with Plaintiff, much less consider his recommendations for donations from the Fund, and directing Plaintiff to refrain from further attempts to communicate with WaterStone.

27.    WaterStone's bad faith conduct has interfered with the charitable

purposes of the Fund and its advisor's right to have his recommendations accepted

and considered in good faith in furtherance of the philanthropic purposes and

objectives of the Fund.

28.    Among other things, with no distributions being made from the Fund,

the Fund's purpose of supporting charitable endeavors has been defeated.

29.    Plaintiff has repeatedly demanded in writing and orally that

WaterStone cure its breaches and fulfill its duties.

30.    On or about March 5, 2024, Ken Harrison, WaterStone's CEO,

conducted a Zoom call with Plaintiff during which Mr. Harrison informed Plaintiff

that WaterStone was terminating further communication with Plaintiff about the

Fund.

31.    At the conclusion of the March 5, 2024 call, Mr. Harrison directed

Plaintiff to never contact WaterStone again, and abruptly ended the call.

32.    During the March 5 call, Mr. Harrison swore at Plaintiff and used

abusive language toward him.

33.    After the call, Plaintiff discovered that his online access to Fund

information was terminated.

34.    On or about March 11, 2024, in an attempt to restore his relationship

with WaterStone and regain access to information about the Fund, Plaintiff sent an

email to WaterStone, expressing a desire to restart Plaintiff's relationship with

WaterStone.

35.     Mr. Harrison responded to Plaintiff with an email that was accusatory and unprofessional. John Mulder, WaterStone's past president and current "chief generosity advisor," responded that there might be a way for Plaintiff to be restored to the account, but Plaintiff never heard back from WaterStone regarding this possibility.

36.     During August 2-6, 2024, Plaintiff sent a letter to each member of WaterStone's Board of Directors explaining the situation and seeking their assistance in resolving it. WaterStone and its board members provided no reply or acknowledgment of these letters.

37.     Later, Plaintiff again emailed several members of WaterStone's Board of Directors seeking resolution. Again, WaterStone and its Board members provided no response.

38.     On or about February 5, 2025, after a year of making no distributions from the Fund, Mr. Mulder finally contacted Plaintiff to inform him that WaterStone would permit a distribution of $400,000 from the Fund. Upon information and belief, this $400,000 was the only amount of the Fund that was not invested by WaterStone.

39.     Plaintiff directed this distribution to organizations that the Fund had historically supported and reminded WaterStone that the Fund was approximately $4.5 million behind in distributions over the prior two years.

40. WaterStone sent the grant checks as directed but did not respond to Plaintiff's concerns about the distribution shortfall.

41. Notably, in a conversation that occurred after the death of Plaintiff's father, Gordon Peterson, in 2019 but before Ruth Peterson's death in 2021, Mr. Mulder told Plaintiff about another donor-advised fund situation in which the donor had died and the children who were the fund's advisors wanted to make grants to organizations that WaterStone would not approve. Mr. Mulder told Plaintiff that WaterStone informed those advisors that WaterStone would not approve the grants because they were outside WaterStone's stated giving principles but that the advisors could transfer the account to another organization who would, and WaterStone would facilitate moving the account. He then added, referring to the Peterson Family Stewardship Fund, "but the account isn't as large as your father's." This statement suggested that larger donor-advised funds would receive less deference or flexibility than smaller funds, the opposite of the personalized service WaterStone advertises and the opposite of the reason Gordon Peterson selected WaterStone over larger donor-advised fund sponsors.

42. As a direct and proximate result of WaterStone's acts and omissions, the Fund and Plaintiff have suffered and continue to suffer damages, including but not limited to lost charitable opportunities, diminution or impaired use of Fund assets, excessive or unauthorized fees, administrative delays causing adverse grant timing, and costs incurred to investigate and address WaterStone's noncompliance

10

with its obligations.

43.    All conditions precedent to the bringing of this action have occurred or been performed.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract)

44.    Plaintiff incorporates herein the allegations set forth above.

45.    On or about February 1, 2024, Plaintiff requested WaterStone to provide him a copy of the agreement by which the Fund was created in 2005, but WaterStone refused and continues to refuse to provide it.

46.    On December 18, 2025, WaterStone reiterated its refusal to provide a copy of the agreement by which the Fund was created.

47.    Upon information and belief, there exists a valid, enforceable contract governing the administration, investment, and grant-making processes of the Fund, as well as related disclosures, communications, and fees.

48.    Upon information and belief, Plaintiff is the sole advisor of the fund pursuant to the contract.

49.    Plaintiff has performed or stood ready, willing, and able to perform all obligations required of him as the Fund's advisor.

50.    WaterStone has breached its agreement by, among other things: failing to timely honor eligible grant recommendations; imposing unauthorized restrictions; failing to provide accurate and timely accountings; assessing

unauthorized or undisclosed fees; deviating from investment guidelines or prudent
management; and failing to maintain adequate controls and communications.

51.    As a direct and proximate result of WaterStone's breaches, Plaintiff
and the Fund have sustained damages in an amount to be proven at trial, including
compensatory damages, expectancy damages, and consequential damages, and they
are entitled to equitable relief including specific performance and injunctive relief
requiring WaterStone's compliance with its obligations.

## SECOND CLAIM FOR RELIEF
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

52.    Plaintiff incorporates herein the allegations set forth above.

53.    The agreement under which WaterStone created the Fund includes an
implied covenant of good faith and fair dealing requiring that neither party do
anything to defeat or impair the other's right to receive the benefits of the
agreement.

54.    WaterStone breached its implied covenant by its acts and omissions
described above, including unreasonably and arbitrarily withholding or delaying
approval of eligible grant recommendations; failing to provide accurate, timely
statements and disclosures; imposing conditions not contemplated by its agreement
with the Fund's donor; refusing even to communicate with Plaintiff as the Fund's
advisor, much less consider his recommendations for donations from the Fund; and
otherwise frustrating the reasonable expectations of Plaintiff.

55.    As a result, Plaintiff has suffered damages and is entitled to

compensatory and equitable relief, including specific performance and injunctions requiring WaterStone to administer the Fund in good faith and consistently with its implied covenant.

## THIRD CLAIM FOR RELIEF
### (Accounting)

56.    Plaintiff incorporates herein the allegations set forth above.

57.    In his capacity as the Fund's advisor, Plaintiff is entitled to a full and complete accounting of the Fund's assets, transactions, allocations, fees, expenses, investment decisions, and performance.

58.    WaterStone has failed to provide Plaintiff with a complete and accurate accounting despite demand.

59.    Equity requires an accounting to determine all amounts due and any improper charges or losses attributable to WaterStone's conduct.

## FOURTH CLAIM FOR RELIEF
### (Declaratory Judgment (28 U.S.C. § 2201))

60.    Plaintiff incorporates herein the allegations set forth above.

61.    An actual, justiciable controversy exists between the parties regarding their respective rights, duties, and obligations under the agreement governing the Fund, and applicable law, including but not limited to:

    A. whether Plaintiff, as the duly designated contractual advisor of the Fund, retains the authority to recommend grants from the Fund and whether WaterStone must give due and good-faith consideration to such

recommendations;

B.  whether WaterStone has a duty to communicate with Plaintiff and respond to his grant recommendations in a timely manner;

C.  whether WaterStone may refuse to consider grant recommendations based on personal animosity toward the Fund's advisor rather than on the merits of the recommendations or the eligibility of proposed grantees;

D.  whether the Operation Mobilization grant recommendation submitted by Plaintiff was consistent with the Fund's Purpose Statement and charitable objectives and should have been honored;

E.  whether WaterStone has a duty to provide Plaintiff with regular, accurate, and complete accountings of the Fund's assets, transactions, fees, and investment performance;

F.  whether WaterStone may unilaterally deny Plaintiff access to the Fund's account information and online portal;

G.  whether WaterStone's conduct in refusing to distribute any funds from the Fund during 2024 and its refusal to communicate with Plaintiff violates its obligations as sponsor and administrator of the Fund;

H.  whether WaterStone can limit grant amounts and specify a narrow time period when grant recommendations can be submitted;

I.  whether Plaintiff is entitled to access Fund documents, including the

contract creating the Fund in 2005; and

J.  whether the Fund is a donor-advised fund if there is no advisor to the Fund as required by 26 U.S.C. § 4966(d)(2)(A)(iii).

62.    A declaration of the parties' rights and obligations is necessary and appropriate to resolve this actual controversy and to provide guidance for the ongoing administration of the Fund. Without such a declaration, uncertainty will continue regarding Plaintiff's rights as advisor, WaterStone's corresponding duties, and the proper administration of the Fund in furtherance of its charitable purposes.

## FIFTH CLAIM FOR RELIEF
### (Injunctive Relief)

63.    Plaintiff incorporates herein the allegations set forth above.

64.    Plaintiff lacks an adequate remedy at law to prevent ongoing and future harm to the Fund's administration and fulfillment of its charitable purposes.

65.    Plaintiff seeks preliminary and permanent injunctive relief requiring WaterStone to promptly consider, process, and honor as appropriate eligible grant recommendations; provide timely, accurate account statements; refrain from charging unauthorized or undisclosed fees; and timely consider in good faith Plaintiff's recommendations as the Fund's advisor.

## SIXTH CLAIM FOR RELIEF
### (Negligent Misrepresentation)

66.    Plaintiff incorporates herein the allegations set forth above.

67.    In connection with its solicitation of donors and administration of

donor-advised funds, WaterStone made material representations of fact to donors, prospective donors, and fund advisors, including Plaintiff and his father Gordon Peterson. These representations include, but are not limited to:

    A.  that WaterStone would "provide excellence in personalized charitable giving services";

    B.  that a WaterStone donor-advised fund "operates like a charitable bank account";

    C.  that fund advisors "can recommend grants to the charities of your choice on your timeline";

    D.  that WaterStone would give due consideration to grant recommendations of fund advisors;

    E.  that WaterStone would communicate with fund advisors regarding the administration of their funds;

    F.  that WaterStone would recognize Plaintiff as successor advisor; and

    G.  that donor advisors could move the fund to a different organization sponsoring donor advised funds.

68.    These representations were made in WaterStone's public filings, on its website, and in communications with donors and fund advisors, with the intent to induce donors to establish and maintain donor-advised funds with WaterStone.

69.    These representations were false or misleading. WaterStone did not provide "excellence in personalized charitable giving services" to Plaintiff; did not

operate the Fund "like a charitable bank account"; did not permit Plaintiff to recommend grants "on [his] timeline"; refused to give any consideration to Plaintiff's grant recommendations; and refused to communicate with Plaintiff at all regarding the administration of the Fund.

70.     WaterStone made these representations without reasonable grounds for believing them to be true, or with reckless disregard for their truth or falsity, given that WaterStone's actual practices were inconsistent with the representations it made.

71.     WaterStone, as a professional sponsor and administrator of donor-advised funds holding itself out as providing specialized charitable giving services, owed a duty to exercise reasonable care in making representations to donors and fund advisors regarding the nature and quality of its services.

72.     WaterStone breached this duty by making representations it knew or should have known were false or misleading, or by failing to exercise reasonable care in ascertaining the truth of its representations.

73.     Plaintiff justifiably relied on WaterStone's representations in serving as advisor to the Fund, in submitting grant recommendations to WaterStone, and in refraining from seeking to transfer the Fund to another sponsor.

74.     As a direct and proximate result of WaterStone's negligent misrepresentations and Plaintiff's justifiable reliance thereon, Plaintiff and the Fund have suffered damages, including but not limited to: the failure to distribute

approximately $1 million to Operation Mobilization as recommended; the complete failure to make any charitable distributions in 2024; lost investment returns on uninvested Fund assets; the frustration of the Fund's charitable purposes; and costs incurred to investigate and remedy WaterStone's misconduct.

**SEVENTH CLAIM FOR RELIEF**
**(Violation of the Colorado Consumer Protection Act, C.R.S. § 6-1-105, et seq.)**

75.    Plaintiff incorporates herein the allegations set forth above.

76.    The Colorado Consumer Protection Act ("CCPA"), C.R.S. § 6-1-101, et seq., prohibits deceptive trade practices in connection with the sale or advertisement of goods or services to consumers.

77.    WaterStone is engaged in the business of providing donor-advised fund sponsorship and charitable giving administration services to donors and fund advisors in Colorado and throughout the United States.

78.    Plaintiff, as the designated advisor to the Fund, and Gordon Peterson, as the donor who established the Fund, were actual consumers of WaterStone's charitable giving services.

79.    In the course of its business, WaterStone knowingly engaged in deceptive trade practices by making false and misleading representations to donors and fund advisors, including but not limited to the representations described above.

80.    WaterStone's deceptive trade practices were knowing and willful, and not the result of a bona fide error or honest mistake.

81.     WaterStone's deceptive trade practices significantly impact the public
as actual and potential consumers of WaterStone's donor-advised fund services.
WaterStone solicits and administers donor-advised funds from numerous donors
throughout Colorado and the United States. WaterStone's false and misleading
representations regarding the nature and quality of its services are directed to the
public at large and have the capacity to mislead current and prospective donors and
fund advisors who rely on such representations in deciding whether to establish or
maintain donor-advised funds with WaterStone.

82.     Upon information and belief, other donors and fund advisors have been
or may be harmed by WaterStone's deceptive practices, including WaterStone's
pattern of treating larger funds with less deference than smaller funds, contrary to
its representations of personalized service.

83.     Consumers of WaterStone's services lack bargaining power in their
dealing with WaterStone.

84.     Gordon Peterson and Plaintiff justifiably relied on WaterStone's
representations in establishing the Fund with WaterStone, contributing over $21
million in charitable assets to the Fund, and continuing to maintain the Fund with
WaterStone rather than seeking to transfer it to another sponsor.

85.     As a direct and proximate result of WaterStone's deceptive trade
practices, Plaintiff and the Fund have suffered actual damages and losses, including
those described herein and the costs and attorneys' fees incurred in bringing this

action.

86.     Pursuant to C.R.S. § 6-1-113, Plaintiff is entitled to recover actual damages sustained as a result of WaterStone's deceptive trade practices, together with costs and reasonable attorneys' fees.

87.     Upon information and belief, WaterStone's deceptive trade practices were willful and knowing, entitling Plaintiff to an award of treble damages pursuant to C.R.S. § 6-1-113(2)(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendant, and award the following relief:

**A.** A declaratory judgment pursuant to 28 U.S.C. § 2201 declaring that:

i. Plaintiff is the duly authorized sole advisor of the Peterson Family Stewardship Fund with full authority to recommend grants consistent with the Fund's Purpose Statement;

ii. WaterStone has a duty to give due and timely consideration to eligible grant recommendations submitted by Plaintiff as the Fund's advisor;

iii. WaterStone may not refuse to consider or process grant recommendations based on personal animosity toward the Fund's advisor;

iv. WaterStone has a duty to communicate with Plaintiff regarding the Fund's administration and to respond to his inquiries and grant recommendations;

v. WaterStone has a duty to provide Plaintiff with regular, accurate, and

20

complete accountings of the Fund's assets, transactions, fees, expenses, investment

decisions, and performance;

vi. WaterStone may not unilaterally deny Plaintiff access to the Fund's

account information and online portal;

vii. The Operation Mobilization grant recommendation submitted by Plaintiff

was consistent with the Fund's charitable purposes and giving history, and should

have been processed and honored;

viii. WaterStone's conduct as alleged herein constitutes a breach of its

contractual obligations and its implied covenant of good faith and fair dealing; and

ix. Waterstone must transfer the Fund to a different sponsoring organization

of Plaintiff's choice at Plaintiff's discretion;

 **B.** Preliminary and permanent injunctive relief:

i. Ordering WaterStone to immediately restore Plaintiff's access to the

Fund's account information and online portal;

ii. Requiring WaterStone to communicate with Plaintiff regarding the

administration of the Fund and to respond to his inquiries in a timely and

professional manner;

iii. Requiring WaterStone to give due consideration to eligible grant

recommendations submitted by Plaintiff and to process such

recommendations in a timely manner consistent with WaterStone's ordinary

practices;

iv. Requiring WaterStone to provide Plaintiff with complete and accurate quarterly (or more frequent) statements and accountings of the Fund's assets, transactions, fees, and investment performance;

v. Enjoining WaterStone from refusing to consider grant recommendations based on personal animosity toward Plaintiff or other improper grounds;

vi. Requiring WaterStone to administer the Fund in good faith and in a manner consistent with the Fund's Purpose Statement and the donor's charitable intent;

vii. Requiring WaterStone to resume making charitable distributions from the Fund consistent with Plaintiff's recommendations and the Fund's charitable purposes; and

viii. Requiring WaterStone to transfer the Fund to a different sponsoring organization of Plaintiff's choice.

**C.** A full and complete accounting of the Fund's assets, transactions, allocations, fees, expenses, investment decisions, and performance for the period from January 1, 2023 to the present, and continuing;

**D.** Compensatory damages in an amount to be proven at trial;

**E.** Treble damages as allowed by law;

**E.** Pre- and post-judgment interest as allowed by law;

**F.** Costs of suit, including reasonable attorneys' fees; and

**G.** Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

DATED this 15th day of January, 2026.

_/s/ Andrew Nussbaum_
Andrew Nussbaum
Edward A. Gleason
Robert J. Bucknam
First & Fourteenth PLLC
2 N. Cascade Ave., Suite 1430
Colorado Springs, CO 80903
Phone: (719) 428-3093
Email: andrew@first-fourteenth.com
        ed@first-fourteenth.com
        rob@first-fourteenth.com
_Attorneys for Plaintiff Philip Peterson_