# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:26-cv-00179-GPG-MDB

PHILIP G. PETERSON, in his capacity as
Successor Advisor to the Peterson Family
Stewardship Fund,

 *Plaintiff,*

v.

CHRISTIAN COMMUNITY FOUNDATION, INC.
d/b/a WaterStone, a Colorado nonprofit corporation,

 *Defendant.*

---

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

---

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND ............................................................................................... 3

ARGUMENT ...................................................................................................... 4

I.     The Complaint Fails to State a Claim for Breach of Contract (Count I) ...... 4

II.    The Complaint Fails to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II) ..................................................... 7

III.   The Complaint Fails to State a Claim for Negligent Misrepresentation (Count VI) ....................................................................................... 9

IV.   The Complaint Fails to State a Claim Under the CCPA (Count VII) ......... 14

V.    The Remaining Counts Assert Remedies Rather Than Claims (Counts III, IV, V) ................................................................................................ 16

CONCLUSION ................................................................................................ 18

i

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alpine Bank v. Hubbell*,
  555 F.3d 1097 (10th Cir. 2009) ................................................................................ 8, 9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ....................................................................................................... 5

*Athena Botanicals, LLC v. Green Earth Techs., L.L.C.*,
  2024 WL 1257407 (D. Colo. Mar. 25, 2024) ............................................................ 13

*Dean v. Wright Med. Tech., Inc.*,
  593 F. Supp. 3d 1086 (D. Colo. 2022) ...................................................................... 10

*Fakiris v. Comm'r of Internal Revenue*,
  113 T.C.M. (CCH) 1555 (T.C. 2017), *supplemented*, 120 T.C.M. (CCH)
  344 (T.C. 2020)............................................................................................................... 6

*Gaddy v. Corp. of the President of the Church of Jesus Christ of Latter-
  Day Saints*,
  148 F.4th 1202 (10th Cir. 2025)................................................................................. 14

*Grossman v. Novell, Inc.*,
  120 F.3d 1112 (10th Cir. 1997)................................................................................. 13

*Guardian Title Agency, LLC v. Matrix Cap. Bank*,
  141 F. Supp. 2d 1277 (D. Colo. 2001) ...................................................................... 10

*HealthONE of Denver, Inc. v. UnitedHealth Grp. Inc.*,
  805 F. Supp. 2d 1115 (D. Colo. 2011) .................................................................. 14, 15

*Heiner v. Watford*,
  2022 WL 18777077 (D. Colo. Nov. 21, 2022) .......................................................... 12

*Kansas Penn Gaming, LLC v. Collins*,
  656 F.3d 1210 (10th Cir. 2011).................................................................................... 7

*In re Level 3 Commc'ns, Inc. Sec. Litig.*,
  667 F.3d 1331 (10th Cir. 2012)................................................................................. 12

*McNees v. Ocwen Loan Servicing, LLC,*
    2019 WL 1762947 (D. Colo. Apr. 22, 2019), *aff'd,* 853 F. App'x 211
    (10th Cir. 2021) ............................................................................................ 16

*Nat'l Heritage Found., Inc. v. Philadelphia Indem. Ins. Co.,*
    2012 WL 5331570 (E.D. Va. Oct. 25, 2012) ......................................................... 6, 8

*Pauley v. United States,*
    459 F.2d 624 (9th Cir. 1972) ..................................................................................... 6

*Peterson v. USAA Life Ins. Co.,*
    353 F. Supp. 3d 1099 (D. Colo. 2018) .................................................................... 14

*Pinkhert v. Schwab Charitable Fund,*
    48 F.4th 1051 (9th Cir. 2022) .......................................................... 5, 6, 8, 9

*Renfro v. Champion Petfoods USA, Inc.,*
    25 F.4th 1293 (10th Cir. 2022) ................................................................................ 11

*Se. Rail Servs., LLC v. Omnitrax, Inc.,*
    2024 WL 5356883 (D. Colo. Oct. 18, 2024) ............................................................. 5

*U.S. Welding, Inc. v. Burroughs Corp.,*
    615 F. Supp. 554 (D. Colo. 1985) ........................................................................... 16

**State Cases**

*Allen v. Steele,*
    252 P.3d 476 (Colo. 2011) ........................................................................................ 9

*Am. Est. & Tr. v. Vonfeldt,*
    2022 WL 22928019 (Colo. App. June 16, 2022) .................................................... 17

*Andrikopoulos v. Broadmoor Mgmt. Co.,*
    670 P.2d 435 (Colo. App. 1983) ............................................................................. 17

*Compton v. Knuth,*
    190 P.2d 117 (Colo. 1948) (en banc) ..................................................................... 17

*Coomer v. Donald J. Trump for President, Inc.,*
    552 P.3d 562 (Colo. App. 2024) ............................................................................. 17

*Forest City Stapleton Inc. v. Rogers,*
    393 P.3d 487 (Colo. 2017) ........................................................................................ 7

iii

*Hall v. Walter*,
    969 P.2d 224 (Colo. 1998) ........................................................................ 14

*Omer v. Nsirat,*
    2025 WL 1351674 (Colo. App. May 8, 2025) ......................................... 17

*Park Rise Homeowners Ass'n v. Resource Constr. Co.*,
    155 P.3d 427 (Colo. App. 2006) .............................................................. 11

*Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*,
    62 P.3d 142 (Colo. 2003)................................................................... 12, 16

*Soderlun v. Pub. Serv. Co. of Colorado*,
    944 P.2d 616 (Colo. App. 1997) ................................................................ 8

*Tristan v. Strother*,
    2018 WL 11714816 (Colo. App. Feb. 15, 2018) ..................................... 12

*W. Distrib. Co. v. Diodosio*,
    841 P.2d 1053 (Colo. 1992) (en banc)....................................................... 4

**Federal Statutes**

26 U.S.C. § 170(d)(18) ................................................................................. 6

26 U.S.C. § 4966(d)(2)(A) ............................................................................ 6

**State Statutes**

C.R.S. § 6-1-105 ....................................................................................... 14

## **INTRODUCTION**

The Internal Revenue Code (the "IRC") makes an income tax deduction available in the year that a taxpayer donates to charity. Thus, if a taxpayer donates over several years, tax deductions span those years. A donor-advised fund ("DAF") allows a taxpayer to realize a current-year charitable tax deduction while having the funds flow to charities over multiple years. To accomplish this, the donor must: (i) engage a sponsor to create a DAF; (ii) irrevocably transfer assets to the DAF such that the DAF sponsor receives complete control of the assets; and (iii) thereafter at most offer nonbinding advice about charitable donations from the DAF.

Defendant Christian Community Foundation, Inc. d/b/a WaterStone ("WaterStone") is a nonprofit organization that sponsors DAFs. In 2005, a non-party donor signed a Sponsorship Agreement with WaterStone to create the Peterson Family Stewardship Fund (the "Fund"). Plaintiff Philip G. Peterson ("Plaintiff") is the donor's son and alleges that, in 2021, he became the charitable advisor to the Fund. He complains that, beginning in 2024, WaterStone did not timely comply with his donation recommendations and brings this suit for breach of contract, misrepresentation, and consumer deception. However, the Complaint fails to state a claim.

***Contract-Based Claims***: The Complaint identifies no breached contractual promise. A DAF, both by the express terms of the Sponsorship Agreement and of necessity under the IRC, vests *all rights* in the sponsor, not the donor or the advisor. Thus, Plaintiff's allegation that WaterStone, beginning in 2024, did not honor his donation suggestions or provide him with other benefits would not describe a breach of

1

contract, because he did not have (and does not allege he had) such contractual rights. Plaintiff's claim for breach of the implied covenant of good faith and fair dealing similarly seeks to read into the Sponsorship Agreement rights that run contrary to its terms and relevant IRC provisions.

*Negligent Misrepresentation:*  Plaintiff fares no better by sifting through WaterStone's tax filings and website to find statements to attack in a claim for negligent misrepresentation.  Justifiable reliance is lacking because Plaintiff does not contend he read the materials and, even if he had, the materials all post-date the creation of the Fund and his alleged appointment as advisor, so he could not have relied on the statements in connection with those events.  Regardless, the cited statements—which consist largely of highly generic descriptions of WaterStone's business—are not rendered false by Plaintiff's accusation that, 19 years after the Fund's creation by someone else, WaterStone did not honor his donation recommendation.

*Colorado Consumer Protection Act*:  Plaintiff also cannot use the Colorado Consumer Protection Act ("CCPA") to create a viable claim.  In addition to the absence of any false statement or causation, the CCPA expressly does not apply to private disputes such as this one.

*Accounting, Declaratory judgment, Injunctive relief*:  The remaining Counts seek remedies rather than articulating claims and fail in the absence of viable claims.

Thus, the Court should dismiss the Complaint with prejudice.

2

## **BACKGROUND**

Defendant WaterStone is a nonprofit organization that sponsors DAFs.  Dkt. No. 1, Complaint, ("Compl.") ¶¶ 5, 8.  As described below, a DAF is a vehicle recognized under the IRC that allows a donor to contribute assets to a sponsor, relinquish to the sponsor all rights with regard to those funds, and take a charitable tax deduction that year with regard to those funds even if the funds are donated from the DAF to charities in subsequent years.

In 2005, non-party Gordon J. Peterson established the Fund as a DAF.  He did so by executing the Application that is attached to the Complaint as Exhibit 1.  It named "Gordon J. Peterson" as "Fund Advisor" and as "Successor Advisement" named James A. Peterson (Gordon's son), Marisa D. Peterson (daughter-in-law), and Ruth A. Peterson (wife).  A section of the Application titled "Agreement" appears directly above his signature with the following text:

> By completing and signing this application, we certify that we understand the nature of Donor Advised Funds and will conduct our activities in compliance with the regulations of the Internal Revenue Code.  We will abide by the policies and conditions set forth by the Christian Community Foundation, which in some instances, exceed government requirements.  We acknowledge receipt of a current fee schedule and understand that fees will apply when the account is funded.  **We understand that in order for our contributions to qualify as an income tax deduction, our gift is irrevocable, and the ownership and custody of our donated funds and property will be fully relinquished to the Christian Community Foundation.  Further, we understand that our communication regarding the fund is advisory only and the ultimate decisions and control relative to each of these issues are the responsibility of Christian Community Foundation.**

3

Compl. Ex. 1 at 2 (bold in original) (the "Sponsorship Agreement").

On November 1, 2017, Gordon Peterson sent a letter to WaterStone purporting to change the "Successor Advisement" to Ruth A. Peterson and Plaintiff. Compl. ¶ 18, Compl., Ex. 2. In 2021, Plaintiff alleges that he became the sole "advisor of the Fund" upon Ruth A. Peterson's death. Compl. ¶¶ 17–20.

For three years from 2021-2024, Plaintiff does not allege any wrongdoing. Then, beginning in March 2024, he alleges that WaterStone removed his access to Fund information, ceased communication, and did not timely honor his donation requests, though he acknowledges that WaterStone eventually made a donation that he desired. *Id.* ¶¶ 21–34. Plaintiff sues for breach of contract, breach of the implied covenant of good faith and fair dealing, accounting, declaratory judgment, injunctive relief, negligent misrepresentation, and violation of the CCPA.

## ARGUMENT

### I.     The Complaint Fails to State a Claim for Breach of Contract (Count I)

The elements of breach of contract are: (1) a contract; (2) plaintiff's performance or justification for nonperformance; (3) defendant's nonperformance; and (4) damages. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (en banc) (citation omitted). Here, dismissal is appropriate because the nonperformance and damage elements are absent.

Plaintiff alleges that WaterStone breached the 2005 contract creating the Fund by, in 2024, "failing to timely honor eligible grant recommendations; imposing unauthorized restrictions; failing to provide accurate and timely accountings; assessing

4

unauthorized or undisclosed fees; deviating from investment guidelines or prudent management; and failing to maintain adequate controls and communications." Compl. ¶ 50. However, none of those assertions establish a breach of contractual performance by WaterStone because no contractual term obligated WaterStone to do any of those things. The Sponsorship Agreement (block quoted above) does not call for WaterStone to honor grant recommendations, provide accountings, follow particular guidelines, have particular controls, or engage in particular communications.[1] To the contrary, the terms provide only that the donor's "gift is irrevocable" and that "ownership and custody … will be fully relinquished to the Christian Community Foundation." Application at 2. The terms further provide that "the ultimate decisions and control relative to each of these issues are the responsibility of [WaterStone]."

Indeed, the Sponsorship Agreement could not possibly confer upon Plaintiff the contractual rights he asserts because then the Fund would not qualify as a DAF under the IRC, which would be inconsistent with the Sponsorship Agreement's express terms establishing a DAF in compliance with the IRC. *See* Sponsorship Agreement (purporting to establish a "Donor Advised Fund" that it will "comply with the regulations of the Internal Revenue Code"). A DAF facilitates a current-year tax deduction when assets are contributed, *see Pinkhert v. Schwab Charitable Fund*, 48 F.4th 1051, 1052

---

[1] With regard to the allegation of unauthorized fees, the Complaint fails to allege with the required details either what the authorized fees were or how the fees charged deviated from such. Threadbare assertions that fees were "unauthorized," without supporting factual allegations, do not suffice. *Se. Rail Servs., LLC v. Omnitrax, Inc.*, 2024 WL 5356883, at *2 (D. Colo. Oct. 18, 2024) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)).

(9th Cir. 2022), but that deduction is available *only* if the DAF sponsor receives "exclusive legal control over the assets contributed," 26 U.S.C. § 170(d)(18) (establishing tax deduction); 26 U.S.C. § 4966(d)(2)(A) (defining DAF).[2]  Thus, after a contribution of assets to a DAF is complete, "the sponsoring organization is not legally obligated to comply with the donor's advice."  *Pinkhert*, 48 F.4th at 1053; *see also Nat'l Heritage Found., Inc. v. Philadelphia Indem. Ins. Co.*, No. l:12-CV-447, 2012 WL 5331570, at *l (E.D. Va. Oct. 25, 2012) ("The donors may advise the sponsoring foundation how they would like their contributions distributed or invested, but those recommendations are not binding on the sponsoring foundation.").  If Plaintiff had retained the rights he now asserts, then, contrary to the terms of the Sponsorship Agreement, the Fund would not be a DAF in compliance with the IRC.

Further, for many reasons, Plaintiff cannot avoid (or delay) dismissal by suggesting "on information and belief" that some other unspecified agreement beyond the Sponsorship Agreement may exist and contain additional terms.  *See* Compl. ¶ 47. Problems include: *(i)* Plaintiff's guess that another agreement must exist makes no sense because the Application contains a section labeled "Agreement" containing the contractual terms; *(ii)* the Complaint does not plead any terms of an additional contract

---

[2] *See also Pauley v. United States*, 459 F.2d 624, 626 (9th Cir. 1972) ("To constitute a completed gift of property the subject matter must have been placed beyond the dominion and control of the donor."); *Fakiris v. Comm'r of Internal Revenue*, 113 T.C.M. (CCH) 1555 (T.C. 2017), *supplemented*, 120 T.C.M. (CCH) 344 (T.C. 2020) (holding that charitable "contribution is not deductible unless it constitutes a completed gift, meaning the donor 'must do everything reasonably permitted by the nature of the property and the circumstances of the transaction in parting with all incidences of ownership.'") (citation omitted).

6

and thus, necessarily does not plead breach of unspecified terms; *(iii)* even if there were additional contractual terms, they could not confer the rights Plaintiff asserts because then the Fund would not be a DAF, contrary to the express terms of the Sponsorship Agreement; and *(iv)* even if there were an additional contract, Plaintiff does not plead that he is a party to it, so he would not be able to enforce it. *Forest City Stapleton Inc. v. Rogers*, 393 P.3d 487, 490–91 (Colo. 2017) (only parties to contract may enforce it).[3]

Finally, there is also no damage. Because Plaintiff had no contractual right to have his donation recommendations honored, or to receive any of the benefits listed in Compl. ¶ 50, he was not damaged by allegedly failing to receive those things.

## II.     The Complaint Fails to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II)

Plaintiff fares no better asserting a claim for breach of the implied covenant of good faith and fair dealing. The implied covenant "is breached when a party uses discretion conferred by the contract to act dishonestly or to act outside of accepted commercial practices to deprive the other party of the benefit of the contract." *ADT Sec. Servs., Inc. v. Premier Home Prot., Inc.,* 181 P.3d 288, 293 (Colo. App. 2007). However, the implied covenant cannot be used to "contradict terms or conditions for which a party to the contract has bargained," "obligate a party to accept a material change in the terms of the contract," or "assume obligations that vary or contradict the

---

[3] Allowing repleading would be futile because there is in fact no contract beyond the Application's "Agreement," and it is unclear what "information and belief" (Compl. ¶ 47) allowed Plaintiff to guess otherwise. At a minimum, Plaintiff is required to plead the facts that gave rise to the alleged information and belief. *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215–19 (10th Cir. 2011).

7

contract's express provisions."  *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1104–05 (10th Cir. 2009) (citation omitted); *see also Soderlun v. Pub. Serv. Co. of Colorado*, 944 P.2d 616, 623 (Colo. App. 1997) (implied covenant cannot "inject new substantive terms into a contract or change its existing terms").

Here, Plaintiff alleges that WaterStone breached the implied covenant by "unreasonably and arbitrarily withholding or delaying approval of eligible grant recommendations; failing to provide accurate, timely statements and disclosures; imposing conditions not contemplated by its agreement with the Fund's donor; refusing even to communicate with Plaintiff as the Fund's advisor, much less consider his recommendations for donations from the Fund; and otherwise frustrating the reasonable expectations of Plaintiff."  Compl. ¶ 54.  These allegations, however, do not plausibly plead breach of the implied covenant because they either contradict the Sponsorship Agreement or add obligations for which WaterStone and the donor did not bargain.

The Sponsorship Agreement states the sponsor (WaterStone) has sole ownership, custody, and control of Fund assets and that the role of the advisor is purely advisory, so an implied contractual requirement to honor Plaintiff's donation recommendations would impermissibly contradict the express agreement.  Indeed, were such a requirement read into the Sponsorship Agreement, then the Fund would no longer be a DAF.  *See Pinkhert*, 48 F.4th at 1053 ("the sponsoring organization is not legally obligated to comply with the donor's advice"); *see also Nat'l Heritage Found., Inc,* 2012 WL 5331570, at *1 (advisor "recommendations are not binding on the sponsoring foundation").

8

Plaintiff's other demands (for communications, statements, disclosures, etc.) describe rights that the Sponsorship Agreement simply does not confer. *See* Sponsorship Agreement (creating no such rights). And for good reason: to comply with the IRC, WaterStone and the donor created a contract that intentionally afforded advisors *no binding rights*. *See Pinkhert*, 48 F.4th at 1053. Plaintiff's implied covenant claim would impermissibly seek to add such rights. *See Alpine Bank*, 555 F.3d at 1105 (rejecting an implied covenant theory because "[i]t would beggar the imagination to believe that the Bank, after making so clear in the [contract] that it owed [plaintiffs] no duty" was assuming a duty to notify or seek plaintiffs' approval whenever it disbursed funds).

### III. The Complaint Fails to State a Claim for Negligent Misrepresentation (Count VI)

The elements of a negligent misrepresentation claim are that: (1) Defendant, in the course of her business, profession or employment; (2) made a misrepresentation of material fact without exercising reasonable care; (3) for the guidance of others in a business transaction; (4) with knowledge that plaintiff would rely on his or her representation; and (5) plaintiff justifiably relied on the misrepresentation to her detriment. *Allen v. Steele*, 252 P.3d 476, 482 (Colo. 2011).

Here, the Complaint premises the negligent misrepresentation claim on the assertion that WaterStone made false statements in three places: (i) a sentence from a 2023 WaterStone tax form (Compl. ¶ 8); (ii) snippets from WaterStone's 2025 website

9

(*id.* ¶¶ 10, 11);[4] and (iii) during a 2019 oral conversation in which a WaterStone representative allegedly told Plaintiff about a situation involving another DAF (*id.* ¶ 41). The Complaint challenges seven statements that allegedly appeared in these sources (the "Challenged Statements").  *See id*. ¶ 67A-G.  However, the Complaint fails to state a negligent misrepresentation claim because the justifiable reliance and falsity elements are lacking.

*No Justifiable Reliance:*  The Complaint fails to allege justifiable reliance by Plaintiff on a Challenged Statement.  *See Guardian Title Agency, LLC v. Matrix Cap. Bank*, 141 F. Supp. 2d 1277, 1283 (D. Colo. 2001) (dismissing Colorado negligent misrepresentation claim for lack of justifiable reliance); *see also Dean v. Wright Med. Tech., Inc.*, 593 F. Supp. 3d 1086, 1097 (D. Colo. 2022) (dismissing negligent misrepresentation claim where there were no allegations that defendant made statements to plaintiff rather than the public).  This is true for several reasons.

As a threshold matter, the Complaint does not allege that Plaintiff *ever read* the 2023 tax form or the referenced website content, which precludes reliance on them. While Plaintiff claims to have been part of the 2019 conversation, that conversation concerned a different DAF, and nothing allegedly false was said about the Fund.  *See* Compl. ¶ 41 (describing alleged conversation about "another donor-advised fund

---

[4] It is apparent the website content is from 2025 because the Complaint includes static links to the cited webpages that the Court can follow.  *See* Compl. ¶¶ 10–11.  The webpages behind those links are dated and copyrighted 2025.

situation"). Thus, Plaintiff does not allege that he was even personally exposed to any allegedly false statement.

Moreover, the sequence of events confirms Plaintiff could not have done or failed to do anything in reliance on the Challenged Statements. The Complaint alleges that in 2005 Plaintiff's father created the Fund (*id*. ¶ 14) and then in 2017 his father sent a letter to WaterStone purporting to change the Application to make Plaintiff a successor advisor (*id*. ¶ 16). Plaintiff could not have relied on any Challenged Statement in connection with those events because: (i) he does not allege that he was even involved in the creation of the Fund in 2005 or the designation of the successor advisor in 2017; and (ii) the Challenged Statements are dated from 2019–2025 and thus *did not even exist* at the times of those events. And Plaintiff cannot create reliance by alleging that, but for the Challenged Statements, he would at some unspecified later point have transferred the Fund (*id*. ¶ 84) because, as described above, DAF donors/advisors have no legal right to do that.

***No False Statement***: The Complaint also fails to plead that any of the seven Challenged Statements constitutes a materially false statement.

Compl. ¶ 67A: The Challenged Statement that WaterStone provides "excellence in charitable giving services" (*id*. ¶ 67A) is puffery, *i.e.,* vague promotional language that is inactionable as a matter of law due to its non-specificity. *See Renfro v. Champion Petfoods USA, Inc.*, 25 F.4th 1293, 1302 (10th Cir. 2022); *see also Park Rise Homeowners Ass'n v. Resource Constr. Co.*, 155 P.3d 427, 435 (Colo. App. 2006) ("general statements of opinion" are not actionable). Indeed, in the CCPA context

11

(discussed below), courts routinely hold that generalized promotional statements, aspirational language, and descriptions of how a product or service generally operates are not deceptive. *See Tristan v. Strother*, No. 17CA0563, 2018 WL 11714816, at *2 (Colo. App. Feb. 15, 2018) (finding that statements about performing services with "excellence" "were mere puffing, or opinions regarding quality, rather than false representations of fact that could form the basis for a claimed violation of the CCPA"); *see also Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142*, 147–48 (Colo. 2003). In any event, that Plaintiff and WaterStone allegedly had a dispute arise concerning one DAF after 19 years of Fund operation does not render false a general reference years earlier to WaterStone's "excellence." By Plaintiff's flawed logic, every customer dispute with a business would render false any general positive statements about that business. *See In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331, 1343–45 (10th Cir. 2012) (rejecting efforts to plead falsity by relying on selective adverse facts to contradict general statements about a business).[5]

Compl. ¶ 67B–E: The Challenged Statements that DAFs operate like charitable bank accounts where advisors can make recommendations that are given consideration (Compl. ¶ 67B–E) are all accurate descriptions of how DAFs operate. The Complaint itself substantiates the statements are true because, for 19 years (2005–2024), the

---

[5] "Whether a statement constitutes mere puffery is a question of law that can be resolved on a motion to dismiss." *Heiner v. Watford*, No. 20-CV-02652-NYW-STV, 2022 WL 18777077, at *10 (D. Colo. Nov. 21, 2022) (citation omitted).

12

Fund operated to Plaintiff's satisfaction. *id*. ¶ 19.  One advisor's dispute concerning one account does not render false general descriptions of how a business operates.[6]

Compl. ¶ 67F:  Plaintiffs' allegation concerning a supposed statement that "WaterStone would recognize Plaintiff as successor advisor" (Compl. ¶ 67F) is true because the Complaint concedes that WaterStone did exactly that.  *Id*. ¶¶ 17, 19 (WaterStone "acknowledged and agreed" that Plaintiff became a donor advisor and then worked with him for years).

Compl. ¶ 67G:  Finally, the allegation concerning a Challenged Statement that "donor advisors could move the fund to a different organization" (*id*. ¶ 67G) reflects a failure of pleading because it is entirely unclear what statement (if any) is being referenced, or when, where, or by whom it was made.  The Complaint cites three sources of Challenged Statements: the 2023 tax form, the 2025 website, and the 2019 oral conversation.  The tax form (*id*. ¶ 8) and the website (*id*. ¶¶ 10–11) do not allegedly contain the statement.  *id*. ¶¶ 8–11.  Although the oral conversation allegedly concerned a different DAF, the Complaint alleges that Plaintiff understood the speaker to be suggesting that the Fund could *not* be moved away from WaterStone, the opposite

---

[6] Plaintiff also does not allege that any Challenged Statements concerning WaterStone's operation of DAFs were false *when made*.  *See Athena Botanicals, LLC v. Green Earth Techs., L.L.C*., 2024 WL 1257407, at *7 (D. Colo. Mar. 25, 2024) (court evaluates whether statement was false when made, not whether it was allegedly rendered false by subsequent events); *see also Grossman v. Novell, Inc*., 120 F.3d 1112, 1124 (10th Cir. 1997) (recognizing that a statement's falsity cannot be established by events occurring after the statement is made).  Plaintiff acknowledges that the Fund operated in accordance with his wishes for 19 years, meaning that the statements were true when made even by Plaintiff's allegations.

13

of the statement described in the Compl. ¶ 67G.  Regardless of the particulars of the statement, it is not alleged to be false because the Complaint never alleges that Plaintiff tried to move the Fund but was denied.  Thus, the Complaint fails to allege the existence of a materially false statement.[7]

## IV.    The Complaint Fails to State a Claim Under the CCPA (Count VII)

The elements of a claim under the CCPA are that: (1) Defendant engaged in an unfair or deceptive trade practice; (2) the challenged practice occurred in the course of Defendant's business; (3) the practice significantly impacts the public as actual or potential consumers; (4) Plaintiff suffered injury in fact to a legally protected interest; and (5) the practice caused Plaintiff's injury.  *See Hall v. Walter*, 969 P.2d 224, 234–35 (Colo. 1998); *see also* C.R.S. § 6-1-105; *HealthONE of Denver, Inc. v. UnitedHealth Grp. Inc.*, 805 F. Supp. 2d 1115, 1120 (D. Colo. 2011) (all five elements are required to state a claim).  A "deceptive trade practice" requires that Defendant "knowingly [made] a false representation" and that representation must "induce a party to act, refrain from acting, or have the capacity or tendency to attract consumers."  *Peterson v. USAA Life Ins. Co.*, 353 F. Supp. 3d 1099, 1112 (D. Colo. 2018), *aff'd*, 814 F. App'x 408 (10th Cir.

---

[7] Paragraph 11 of the Complaint quotes religious content from WaterStone's website. Plaintiff does not appear to be challenging that content as false because it is not listed in Compl. ¶ 67A–G among the Challenged Statements.  Any such challenge would be a non-starter because, under the First Amendment's ecclesiastical abstention doctrine, a secular court such as this Court cannot adjudicate matters of religion, which is what would be required to, for instance, decide the truth of a statement that WaterStone "honor[s] God" or "[b]uild[s] the Kingdom."  Compl. ¶ 11; *Gaddy v. Corp. of the President of the Church of Jesus Christ of Latter-Day Saints*, 148 F.4th 1202, 1214 (10th Cir. 2025) (holding that "the truth or falsity of religious doctrine or beliefs is beyond the proper purview of secular courts and juries").

14

2020) (citation omitted); *see also* C.R.S. § 6-1-105(1)(e).  A plaintiff may not "simply parrot[] back the language of the CCPA, coupled with a bare assertion that Defendant engaged in … deceptive trade practices" without providing facts to support these allegations.  *Peterson*, 353 F. Supp. 3d at 1113 (citation modified).[8]

Here, Plaintiff premises the CPPA claim on the same seven Challenged Statements that served as the basis for the negligent misrepresentation claim.  Compl. ¶ 79 (pleading CPPA count by asserting that WaterStone made the allegedly false representations "described above," meaning as described in pleading the negligent misrepresentation count).  For three independently dispositive reasons, the Complaint fails to state a CCPA claim.

*First*, the deceptive trade practice element is lacking because the Complaint fails to allege the existence of a materially false statement, as addressed above concerning negligent misrepresentation.  *See supra* Argument § III (addressing falsity element).

*Second*, the causation element of a CCPA claim is lacking for the reasons set forth in the above discussion of why justifiable reliance is lacking as to negligent misrepresentation.  *See supra* Argument § III (addressing justifiable reliance element).  In particular, given that Plaintiff does not even claim to have read the tax form or

---

[8] A CCPA claim is subject to the heightened pleading requirements of Rule 9(b), which requires that the complaint "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *HealthONE of Denver, Inc.*, 805 F. Supp. 2d at 1120–21 (citation omitted).

15

website, and given that all the Challenged Statements post-date the creation of the

Fund and appointment of Plaintiff, those statements could not have caused him harm.

*Finally*, the third CCPA element—a practice that significantly impacts the

public—is also clearly absent.  Colorado courts consistently dismiss CCPA claims that

involve purely private disputes because the CCPA was specifically enacted to regulate

practices that target or impact the public and consumers.  *See, e.g., Rhino Linings USA,*

*Inc.*, 62 P.3d at 150 (dispute between sophisticated parties to transaction did not

significantly impact the public); *U.S. Welding, Inc. v. Burroughs Corp.*, 615 F. Supp.

554, 555–56 (D. Colo. 1985) (plaintiff could not invoke the CCPA as "an additional

remedy to redress a purely private wrong") (citation omitted).  Here, the Complaint

posits that, after 19 years, Plaintiff and WaterStone entered a dispute over the Fund.

There are no factual allegations that WaterStone has similar disputes with anyone else

or has deceived or harmed the public.  Accordingly, this is a prototypical private dispute

that is not actionable under the CCPA.

## V.    The Remaining Counts Assert Remedies Rather Than Claims (Counts III, IV, V)

Under Colorado law, a plaintiff must plead substantive causes of action and

cannot assert remedies as independent claims for relief.  *See McNees v. Ocwen Loan*

*Servicing, LLC,* No. 16-CV-1055-WJM-KLM, 2019 WL 1762947, at *8 (D. Colo. Apr. 22,

2019), *aff'd,* 853 F. App'x 211 (10th Cir. 2021) (dismissing claim because it was "not a

substantive cause of action" but "a remedy" contingent upon proving "other violations of

substantive law").  Colorado courts have consistently held that the matters asserted in

Counts III–V (accounting, declaratory relief, and injunctive relief) are remedies—not

16

stand-alone causes of action—and must be sought, if at all, in the prayer for relief.  *See,
e.g., Am. Est. & Tr. v. Vonfeldt,* No. 20CA1693, 2022 WL 22928019, at *7 (Colo. App.
2022) (accounting is a remedy "dependent upon a substantive cause of action"); *Omer
v. Nsirat,* No. 24CA0504, 2025 WL 1351674, at *3 (Colo. App. May 8, 2025)
("declaratory judgment . . . is not intended to replace substantive causes of action");
*Coomer v. Donald J. Trump for President, Inc.*, 552 P.3d 562, 603 (Colo. App. 2024)
("an injunction, even if pleaded as a claim for relief, is a remedy, not an independent
cause of action").  Because Plaintiff's substantive claims fail for the reasons outlined
above, the remedial counts fail.

Even if Counts III and V were not brought as standalone claims, Plaintiff would
not be entitled to either remedy.  An accounting is an "extraordinary remedy" that is only
available when a "plaintiff is unable to determine" how much money, if any, is owed to
him.  *See Andrikopoulos v. Broadmoor Mgmt. Co.*, 670 P.2d 435, 440 (Colo. App. 1983)
(citation modified).  Here, no money could possibly be owed because the assets were
irrevocably donated to the Fund.  Injunctive relief is also "an extraordinary remedy to be
used sparingly and only in cases where the applicant is clearly entitled thereto, and
where there is full conviction on the part of the court of its urgent necessity."  *Compton
v. Knuth*, 190 P.2d 117, 118–19 (Colo. 1948) (en banc). Nothing like that is present
here.

## CONCLUSION

For the foregoing reasons, Defendant respectfully submits that the Court should

dismiss the Complaint with prejudice.

DATED this 17th day of March, 2026

WILMER CUTLER PICKERING HALE AND
DORR LLP

/s/ Matthew T. Martens
**Matthew T. Martens**
matthew.martens@wilmerhale.com
2100 Pennsylvania Ave. NW
Washington, DC 20037
Tel: 202.663.6000

/s/ Timothy Perla
**Timothy Perla**
timothy.perla@wilmerhale.com
60 State Street
Boston, MA 02109
Tel: 617.526.6696

/s/ Jack R. Hodge
**Jack R. Hodge**
jack.hodge@wilmerhale.com
1225 17th Street, Suite 2600
Denver, CO 80202
Tel: 720.598.3470

*Attorneys for Defendant CHRISTIAN COMMUNITY
FOUNDATION, INC. d/b/a WaterStone*

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of March, 2026, I electronically filed a true and correct copy of the above and foregoing **DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

**Andrew Nussbaum**
**Edward A. Gleason**
**Robert J. Bucknam**
First & Fourteenth PLLC
2 N. Cascade., Suite 1430
Colorado Springs, CO 80903
Phone: (719) 428-3093
Email: andrew@first-fourteenth.com
ed@first-fourteenth.com
rob@first-fourteenth.com

*Attorneys for Plaintiff PHILIP PETERSON*

WILMER CUTLER PICKERING
HALE AND DORR LLP

s/ Jack R. Hodge
**Jack R. Hodge**
jack.hodge@wilmerhale.com
1225 17th Street, Suite 2600
Denver, CO 80202
Tel: 720.598.3470

*Attorney for Defendant CHRISTIAN COMMUNITY FOUNDATION, INC. d/b/a WaterStone*

19