**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-CV-00179-GPG-MDB

PHILIP G. PETERSON, in his capacity as
Successor Advisor to the Peterson Family
Stewardship Fund,

     *Plaintiff,*

v.

CHRISTIAN COMMUNITY FOUNDATION, INC.
d/b/a WaterStone, a Colorado nonprofit corporation,

     *Defendant.*

---

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

---

## <u>TABLE OF CONTENTS</u>

Introduction ........................................................................................................ 1

Background ........................................................................................................ 2

Argument ........................................................................................................... 3

I.    The FAC Fails to State a Claim for Breach of Contract (Count I) ............................ 3

II.   The FAC Fails to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II) ................................................................................ 6

III.   The FAC Fails to State a Claim for Negligent Misrepresentation (Count III) .......... 8

    A.   The Economic Loss Rule Bars the Claim ............................................... 9

    B.   The FAC Fails to Allege the Existence of a False Statement ............................ 10

    C.   The FAC Fails to Allege Justifiable Reliance ....................................... 12

IV.  The FAC Fails to State a Claim Under the CCPA (Count IV) ................................ 13

V.   Declaratory Judgment Fails Absent a Viable Underlying Claim (Count V) ............. 15

Conclusion ....................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Acuity v. Kinsale Ins. Co.*,
   750 F. Supp. 3d 1229 (D. Colo. 2024) ....................................................................... 15

*Alpine Bank v. Hubbell*,
   555 F.3d 1097 (10th Cir. 2009) ............................................................................. 7, 8

*Athena Botanicals, LLC v. Green Earth Techs., L.L.C.*,
   2024 WL 1257407 (D. Colo. Mar. 25, 2024) ............................................................ 10

*Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*,
   861 F.3d 1081 (10th Cir. 2017) .................................................................................. 6

*Fakiris v. Comm'r of Internal Revenue*,
   113 T.C.M. (CCH) 1555 (T.C. 2017) .......................................................................... 5

*FirstTier Bank v. FDIC*,
   935 F. Supp. 2d 1109 (D. Colo. 2019) ........................................................................ 4

*Gaddy v. Corp. of the President of the Church of Jesus Christ of Latter-Day Saints*,
   148 F.4th 1202 (10th Cir. 2025) ............................................................................... 12

*Grant v. Pharmacia & Upjohn Co.*,
   314 F.3d 488 (10th Cir. 2002) .................................................................................... 4

*Grossman v. Novell, Inc.*,
   120 F.3d 1112 (10th Cir. 1997) ................................................................................ 10

*Guardian Title Agency, LLC v. Matrix Cap. Bank*,
   141 F. Supp. 2d 1277 (D. Colo. 2001) ..................................................................... 12

*HealthONE of Denver, Inc. v. UnitedHealth Grp. Inc.*,
   805 F. Supp. 2d 1115 (D. Colo. 2011) ................................................................. 13, 14

*Lopez v. Cricket Commc'ns, Inc.*,
   2012 WL 4936377 (D. Colo. Oct. 16, 2012) ............................................................. 12

*Nat'l Heritage Found., Inc. v. Philadelphia Indem. Ins. Co.*,
   2012 WL 5331570 (E.D. Va. Oct. 25, 2012) ............................................................ 5, 7

*Pauley v. United States*,
   459 F.2d 624 (9th Cir. 1972) ........................................................................ 5

*Peterson v. USAA Life Ins. Co.*,
   353 F. Supp. 3d 1099 (D. Colo. 2018) ....................................................... 13

*Pinkhert v. Schwab Charitable Fund*,
   48 F.4th 1051 (9th Cir. 2022) ............................................................. 5, 7, 8

*U.S. Welding, Inc. v. Burroughs Corp.*,
   615 F. Supp. 554 (D. Colo. 1985) .............................................................. 14

**State Cases**

*ADT Sec. Servs., Inc. v. Premier Home Prot., Inc.*,
   181 P.3d 288 (Colo. App. 2007) ................................................................. 6

*Allen v. Steele*,
   252 P.3d 476 (Colo. 2011) ........................................................................ 9

*BRW, Inc. v. Dufficy & Sons, Inc.*,
   99 P.3d 66 (Colo. 2004) ............................................................................ 9

*Forest City Stapleton Inc. v. Rogers*,
   393 P.3d 487 (Colo. 2017) ......................................................................... 4

*Hall v. Walter*,
   969 P.2d 224 (Colo. 1998) ....................................................................... 13

*Hamon Contractors, Inc. v. Carter & Burgess, Inc.*,
   229 P.3d 282 (Colo. App. 2009) ................................................................. 9

*Heron v. City & Cnty. of Denver*,
   411 P.2d 314 (1966) ................................................................................ 15

*Lodge Props., Inc. v. Eagle Cnty. Bd. of Equalization*,
   2022 CO 9 (Colo. 2022) ............................................................................. 6

*Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*,
   62 P.3d 142 (Colo. 2003) .................................................................... 14, 15

*Soderlun v. Pub. Serv. Co. of Colorado*,
   944 P.2d 616 (Colo. App. 1997) ................................................................. 7

*Town of Alma v. AZCO Const., Inc.*,
   10 P.3d 1256 (Colo. 2000) ......................................................................... 9

*W. Distrib. Co. v. Diodosio*,
  841 P.2d 1053 (Colo. 1992) ....................................................................................... 4

**Federal Statutes**

26 U.S.C. § 170(f)(18) ................................................................................................. 5

26 U.S.C. § 4966(d)(2)(A) ...................................................................................... 1, 5

Internal Revenue Code (IRC) ............................................................................. *passim*

**State Statutes**

C.R.S. § 6–1–105 ...................................................................................................... 13

Colorado Consumer Protection Act ........................................................... 2, 13, 14, 15

**Other Authorities**

Federal Rule of Civil Procedure 9(b) ........................................................................ 14

## CERTIFICATE CONFERRAL

Counsel have conferred regarding this motion. Plaintiff opposes this motion.

## INTRODUCTION

Defendant WaterStone is a non-profit organization that sponsors donor advised funds ("DAFs"), under which the advisor can recommend (but has no right to require) contributions to other charities.[1]  In 2005, a non-party donor signed a Sponsorship Agreement with WaterStone to create the Peterson Family Stewardship Fund (the "Fund"), which expressly stated that "ownership" of donated assets was "fully relinquished" to the Fund and the donor's role was "advisory only."  Plaintiff Philip G. Peterson ("Plaintiff") is the donor's son and alleges that, in 2017, he became the advisor to the Fund.  He admits that for six years the relationship proceeded to his satisfaction and then complains that, beginning in 2024, WaterStone did not honor his donation recommendations.  However, the First Amended Complaint, Dkt. No. 32 ("FAC" or "Complaint") fails to state a claim.

***Contract-Based Claims****:* The Complaint identifies no breached contractual promise.  A DAF, both by the express terms of the Sponsorship Agreement and of necessity under the Internal Revenue Code ("IRC"), vests *all rights* in the sponsor. Thus, Plaintiff's allegation that WaterStone, beginning in 2024, did not honor his recommendations or provide him with other benefits does not describe a breach of

---

[1] A donor-advised fund ("DAF") allows a taxpayer to realize a current-year charitable tax deduction while having the funds flow to charities over multiple years.  The donor must: (i) engage a sponsor to create a DAF; (ii) irrevocably transfer assets to the DAF such that the DAF sponsor receives complete control of the assets; and (iii) thereafter at most offer nonbinding advice about charitable donations from the DAF. *See* 26 U.S.C. § 4966(d)(2)(A).

1

contract, because he lacked such contractual rights.  Plaintiff's claim for breach of the implied covenant of good faith and fair dealing similarly seeks to read into the Sponsorship Agreement rights that run contrary to its terms and to the IRC.

*Negligent Misrepresentation:* Plaintiff fares no better asserting negligent misrepresentation.  The economic loss rule—which prevents plaintiffs from converting a contract into a tort claim by complaining about representations about contract performance—bars the claim.  Regardless, the cited statements about WaterStone's operations are not rendered false at the time they were made by Plaintiff's accusation that, 19 years after Fund creation by someone else, WaterStone did not honor his recommendation.  Finally, justifiable reliance is lacking: Plaintiff contends that, had he known the "truth," he would have transferred the Fund to a different sponsor, but he has no legal right or ability to do so pursuant to the Sponsorship Agreement and IRC.

*Colorado Consumer Protection Act*:  There is also no viable claim under the Colorado Consumer Protection Act ("CCPA").  In addition to the absence of any false statement or causation, the CCPA does not apply to private disputes such as this one.

## BACKGROUND

WaterStone is a non-profit organization that sponsors DAFs.  FAC ¶¶ 5, 8.  A DAF is a vehicle recognized under the IRC through which a donor contributes assets, relinquishes all rights, and receives a charitable tax deduction.

In 2005, non-party Gordon J. Peterson established the Fund, a DAF.  *Id*. ¶¶ 18–19.  He did so by executing the Application that is attached to the Complaint as Exhibit 1.  *Id*. ¶ 19.  It named "Gordon J. Peterson" as "Fund Advisor" and as "Successor

2

Advisement" named James A. Peterson (Gordon's son), Marisa D. Peterson (daughter-in-law), and Ruth A. Peterson (wife).  A section titled "Agreement" appears above his signature with the following text:

> By completing and signing this application, we certify that we understand the nature of Donor Advised Funds and will conduct our activities in compliance with the regulations of the Internal Revenue Code.  We will abide by the policies and conditions set forth by the Christian Community Foundation, which in some instances, exceed government requirements. . . **We understand that in order for our contributions to qualify as an income tax deduction, our gift is irrevocable, and the ownership and custody of our donated funds and property will be fully relinquished to the Christian Community Foundation.  Further, we understand that our communication regarding the fund is advisory only and the ultimate decisions and control relative to each of these issues are the responsibility of Christian Community Foundation.**

FAC, Ex. 1 at 2 (bold in original) (the "Sponsorship Agreement").

On November 1, 2017, Gordon Peterson sent a letter to WaterStone purporting to change the "Successor Advisement" to Ruth A. Peterson and Plaintiff.  FAC ¶ 27, FAC, Ex. 2.  In 2021, Plaintiff alleges that he became the sole "advisor of the Fund" upon Ruth A. Peterson's death.  FAC ¶ 33.

From 2005 to 2023, Plaintiff does not allege wrongdoing.  *Id.* ¶¶ 34, 70.  Then, in 2024, Plaintiff alleges that WaterStone removed his access to Fund information, ceased communication, and did not timely honor his donation requests, though he acknowledges that WaterStone eventually made a desired donation.  *Id.* ¶¶ 35–54.

## ARGUMENT

**I.      The FAC Fails to State a Claim for Breach of Contract (Count I)**

3

The elements of breach of contract are: (1) a contract; (2) plaintiff's performance or justification for nonperformance; (3) defendant's nonperformance; and (4) damages. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (en banc) (citations omitted). Interpretation of a contract's terms is a question of law for the court. *See Grant v. Pharmacia & Upjohn Co.*, 314 F.3d 488, 491 (10th Cir. 2002); *see also FirstTier Bank v. FDIC*, 935 F. Supp. 2d 1109, 1126 n.25 (D. Colo. 2019) (holding that courts can "interpret a contract on a motion to dismiss, and courts routinely do so").

As a threshold matter, Plaintiff cannot state a claim for breach of contract because he is not a party to the Sponsorship Agreement. *See* FAC, Ex. 1 (contract between donor and WaterStone, not mentioning Plaintiff); *Forest City Stapleton Inc. v. Rogers*, 393 P.3d 487, 490–91 (Colo. 2017) (only parties to contract may enforce it).

Beyond that, dismissal is also appropriate because the nonperformance and damage elements are absent. None of Plaintiff's assertions[2] establish a breach of contractual performance because no contractual term obligated WaterStone to do those things. The Sponsorship Agreement does not call for WaterStone to honor grant recommendations, provide accountings, follow particular guidelines, or engage in particular communications.[3] It further provides that "the ultimate decisions and control

---

[2] Plaintiff alleges that WaterStone breached the Sponsorship Agreement by, in 2024, "withdrawing its recognition of Plaintiff as the advisor to the Fund; refusing to communicate with Plaintiff; failing to timely consider eligible grant recommendations; failing to explain its refusal to approve eligible granting recommendations; imposing unauthorized restrictions; failing to provide accurate and timely accountings; assessing unauthorized or undisclosed fees; deviating from investment guidelines or prudent management; and failing to maintain adequate controls and communications with Plaintiff." FAC ¶ 73.

[3] To the contrary, the Sponsorship Agreement's terms provide only that the donor's "gift is irrevocable" and that "ownership and custody … will be fully relinquished to the Christian Community Foundation." *See* FAC, Ex. 1.

4

relative to each of these issues are the responsibility of [WaterStone]."  FAC, Ex. 1 at 2.
There is no allegation that WaterStone violated any of those terms.

Indeed, the Sponsorship Agreement could not possibly confer upon Plaintiff the contractual rights he asserts because then the Fund would not qualify as a DAF under the IRC, which would be inconsistent with the Sponsorship Agreement's express terms establishing a DAF in compliance with the IRC.  *See* FAC, Ex. 1 (purporting to establish a DAF that will comply with the regulations of the IRC).  A DAF facilitates a tax deduction when assets are contributed, *see Pinkhert v. Schwab Charitable Fund*, 48 F.4th 1051, 1052 (9th Cir. 2022), but that deduction is available *only* if the DAF sponsor receives "exclusive legal control over the assets contributed." *See* 26 U.S.C. § 170(f)(18) (establishing tax deduction); 26 U.S.C. § 4966(d)(2)(A) (defining DAF).[4] Thus, once assets are contributed to a DAF, "the sponsoring organization is not legally obligated to comply with the donor's advice."  *Pinkhert*, 48 F.4th at 1053.[5]  If Plaintiff had retained the rights he now asserts, then, contrary to the terms of the Sponsorship Agreement, the Fund would not be a DAF in compliance with the IRC.

Plaintiff cannot forestall dismissal by insisting that the Sponsorship Agreement contains numerous additional terms concerning communications, periodic reporting,

---

[4] *See also Pauley v. United States*, 459 F.2d 624, 626 (9th Cir. 1972) ("To constitute a completed gift of property the subject matter must have been placed beyond the dominion and control of the donor."); *Fakiris v. Comm'r of Internal Revenue*, 113 T.C.M. (CCH) 1555 (T.C. 2017), *supplemented*, 120 T.C.M. (CCH) 344 (T.C. 2020) (holding that charitable "contribution is not deductible unless it constitutes a completed gift, meaning the donor 'must do everything reasonably permitted by the nature of the property and the circumstances of the transaction in parting with all incidences of ownership.'" (citation omitted)).

[5] *See also Nat'l Heritage Found., Inc. v. Philadelphia Indem. Ins. Co.*, 2012 WL 5331570, at *1 (E.D. Va. Oct. 25, 2012) ("The donors may advise the sponsoring foundation how they would like their contributions distributed or invested, but those recommendations are not binding on the sponsoring foundation.").

fees, etc.  FAC ¶¶ 67–69.  The Sponsorship Agreement is attached to the Complaint,

and the Court can see that it does not contain those terms.  *See* FAC, Ex. 1.  Where a

written instrument is attached to the Complaint, its actual terms control over contrary

allegations about what the instrument supposedly states.  *Brokers' Choice of Am., Inc.*

*v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017) ("if there is a conflict

between the allegations in the complaint and the content of the attached exhibit, the

exhibit controls").  Under well-settled law, this Court in interpreting a contract does not

add terms that are not present.  *See Lodge Props., Inc. v. Eagle Cnty. Bd. of*

*Equalization,* 2022 CO 9, ¶ 37 (Colo. 2022).  Thus, there is no breach of any term of the

Sponsorship Agreement.

Finally, there is no damage.  Plaintiff had no contractual right to have his

donation recommendations honored, to receive the benefits listed in FAC ¶ 73, or to

transfer the Fund to another sponsor, so he was not damaged by allegedly being unable

to do those things.

## II.     The FAC Fails to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II)

A contract's implied covenant "is breached when a party uses discretion

conferred by the contract to act dishonestly or to act outside of accepted commercial

practices to deprive the other party of the benefit of the contract."  *ADT Sec. Servs., Inc.*

*v. Premier Home Prot., Inc.,* 181 P.3d 288, 293 (Colo. App. 2007).  However, the

implied covenant cannot be used to "contradict terms or conditions for which a party to

the contract has bargained," "obligate a party to accept a material change in the terms

of the contract," or "assume obligations that vary or contradict the contract's express

provisions." *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1104–05 (10th Cir. 2009); *see also Soderlun v. Pub. Serv. Co. of Colorado*, 944 P.2d 616, 623 (Colo. App. 1997) (implied covenant cannot "inject new substantive terms into a contract or change its existing terms").

Here, Plaintiff alleges that WaterStone breached the implied covenant by "withholding or delaying approval of eligible grant recommendations; failing to provide accurate and timely statements and disclosures; refusing to apprise Plaintiff of withdrawals from the Fund or investment strategies of its assets; imposing conditions not contemplated by its agreement with the Fund's donor; and refusing even to communicate with Plaintiff as the Fund's advisor." FAC ¶ 84. These allegations, however, either contradict the Sponsorship Agreement or add obligations for which WaterStone and the donor did not bargain.

The Sponsorship Agreement states the sponsor has sole ownership, custody, and control of Fund assets and that the role of the advisor is purely advisory, so an implied contractual requirement to honor Plaintiff's donation recommendations would impermissibly contradict the express agreement. Indeed, were such a requirement read into the Sponsorship Agreement, then the Fund would no longer be a DAF. *See Pinkhert*, 48 F.4th at 1053 ("the sponsoring organization is not legally obligated to comply with the donor's advice"); *see also Nat'l Heritage Found., Inc,* 2012 WL 5331570, at *1 (advisor "recommendations are not binding on the sponsoring foundation"). Plaintiff's other demands (for communications, statements, disclosures, etc.) describe rights that the Sponsorship Agreement does not confer. *See* FAC, Ex. 1.

7

To comply with the IRC, WaterStone and the donor created a contract that afforded advisors *no binding rights*. *See Pinkhert*, 48 F.4th at 1053. Plaintiff's implied covenant claim would impermissibly seek to add such rights. *See Alpine Bank*, 555 F.3d at 1105 (rejecting implied covenant theory because "[i]t would beggar the imagination to believe that the Bank, after making so clear in the [contract] that it owed [plaintiffs] no duty" was assuming a duty to notify or seek plaintiff's approval whenever it disbursed funds).

### III.    The FAC Fails to State a Claim for Negligent Misrepresentation (Count III)

Unable to allege noncompliance with the Sponsorship Agreement, Plaintiff pivots to claiming misrepresentation. FAC ¶ 93 identifies six allegedly false statements about operation of the Fund (the "Challenged Statements"). The Complaint appears to allege that most or all these Challenged Statements were made in November 2017 by a WaterStone representative, though the Complaint is strategically unclear about whether the Challenged Statements were made to Plaintiff or just the donor. *See* FAC ¶¶ 25–28.[6] Plaintiff alleges that the Challenged Statements were rendered false by the dispute that arose in 2024 between Plaintiff and WaterStone whereby WaterStone allegedly cut off his access. *Id*. ¶¶ 35, 94.

To make a claim for negligent misrepresentation, Plaintiff must allege that: (1) Defendant, in the course of his business, profession or employment; (2) made a misrepresentation of material fact, without exercising reasonable care; (3) for the guidance of others in a business transaction; (4) with knowledge that plaintiff would rely

---

[6] The unclarity arises because FAC ¶ 28, in describing the Challenged Statements, posits only that "Mr. Mulder represented …" while avoiding pleading *to whom*. This alone reflects a pleading failure that should yield dismissal because, if the representations were not even made to Plaintiff, then the Complaint supplies no factual basis for element four, i.e., that WaterStone knew Plaintiff would rely.

on his representation; and (5) plaintiff justifiably relied on the misrepresentation to his detriment.  *Allen v. Steele*, 252 P.3d 476, 482 (Colo. 2011).  Here, elements of negligent misrepresentation are lacking, and the economic loss rule precludes the claim.

### A.    The Economic Loss Rule Bars the Claim

The economic loss rule bars tort recovery where the alleged breach of a contractual duty results in purely economic loss. *See Town of Alma v. AZCO Const., Inc.,* 10 P.3d 1256, 1266 (Colo. 2000) ("a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law").  If a plaintiff's tort claim is based solely on defendant's contractual duty "to perform its obligations with care and in a non-negligent manner," then the economic loss rule applies and bars any tort claims. *See BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 72–74 (Colo. 2004) (negligence and negligent misrepresentation claims were barred by economic loss rule); *see also Hamon Contractors, Inc. v. Carter & Burgess, Inc.*, 229 P.3d 282, 289–90 (Colo. App. 2009)*, as modified on denial of reh'g* (June 11, 2009) (post-contract fraud claim was barred by the economic loss rule*).

Here, the economic loss rule bars Plaintiff's tort claim for negligent misrepresentation because it is rooted in WaterStone's alleged breach of its contractual duties and performance under the Sponsorship Agreement.  Plaintiff cannot simply repackage its breach of contract claim and attempt to recover in tort for a purely economic loss resulting from an alleged failure to perform a contractual obligation.

9

### B.    The FAC Fails to Allege the Existence of a False Statement

The negligent misrepresentation claim also fails because the Complaint does not plead that any of the Challenged Statements were false.

***FAC ¶ 93A***: Plaintiff first challenges an alleged statement by WaterStone in 2017 that Plaintiff would be recognized as advisor to the Fund.  FAC ¶ 93A.  But the Complaint makes clear this statement is true.  Specifically, Plaintiff pleads that WaterStone in 2017 recognized him as advisor to the fund and worked with him as such for six years thereafter.  *Id*. ¶ 70.

Plaintiff cannot establish falsity by positing that the statement later became false in 2024 when the dispute arose.  The truth of a challenged statement is evaluated *when made* not based on subsequent events.  *Athena Botanicals, LLC v. Green Earth Techs., L.L.C*., 2024 WL 1257407, at *7 (D. Colo. Mar. 25, 2024) (court evaluates whether statement was false when made, not whether it was allegedly rendered false by subsequent events); *Grossman v. Novell, Inc*., 120 F.3d 1112, 1124 (10th Cir. 1997) (recognizing that a statement's falsity cannot be established by events occurring after the statement is made).  Here, the Complaint acknowledges that the Fund operated exactly as Plaintiff wished for 19 years (including six years with Plaintiff as advisor).  That the parties allegedly had a dispute in 2024 does not mean descriptions from long ago about how the relationship would work were false when made.

***FAC ¶ 93B–E***: Plaintiff also challenges four alleged statements from 2017 about how his role as advisor would work in terms of recommendations, discussions, and communications.  FAC ¶ 93B–E.  But, again, the Complaint substantiates that these

statements were true because he admits that, for 19 years, the relationship operated as he expected. *Id*. ¶ 70. And, again, that a dispute arose in 2024 does not retroactively render false statements from six years earlier.

***FAC ¶ 93F***: Finally, Plaintiff challenges an alleged statement that he "could move the fund" to a different sponsor. FAC ¶ 93F. The first problem with this allegation is that, as the Complaint otherwise makes clear, that summary allegation distorts what was actually said. The alleged conversation that serves as the basis for FAC ¶ 93F is detailed in FAC ¶¶ 55–57. Those paragraphs recount that a WaterStone representative allegedly shared with Plaintiff an anecdote about how WaterStone had allowed another fund to be transferred to a different sponsor (¶¶ 55–56) before adding "but the account isn't as large as your father's" (¶ 57). By contrasting the smaller fund that was the subject of the anecdote with Plaintiff's father's Fund, WaterStone was communicating that the Fund could *not* be transferred. There is no coherent reading of ¶¶ 55–57 that WaterStone promised that the Fund could be transferred. Indeed, it would have made no sense for WaterStone to communicate—or Plaintiff to understand—that Plaintiff had the legal right to transfer the Fund. As explained above, both the Sponsorship Agreement and the IRC make clear that *all rights* are relinquished when the funds are transferred to the DAF.

Moreover, even if (contrary to FAC ¶ 55–57, the Sponsorship Agreement, and the IRC) there were a statement that the Fund could be transferred, the Complaint does not plead any occasion on which Plaintiff submitted a transfer request that was denied. Rather, the Complaint pleads that Plaintiff "refrain[ed]" from seeking transfer. FAC ¶ 97.

Finally, WaterStone observes that FAC ¶¶ 8–11 quote various statements cherrypicked from WaterStone's 2025 website.  Plaintiff does not appear to be challenging those statements as false because they are not listed in FAC ¶ 93 among the allegedly false statements.  Regardless, none of the statements in FAC ¶¶ 8–11 are actionable.  Many of the quotes are religious (*e.g.*, that WaterStone "builds the kingdom") such that the First Amendment's ecclesiastical abstention doctrine precludes adjudication of their truth by this Court.  *Gaddy v. Corp. of the President of the Church of Jesus Christ of Latter-Day Saints*, 148 F.4th 1202, 1214 (10th Cir. 2025) (holding that "the truth or falsity of religious doctrine or beliefs is beyond the proper purview of secular courts and juries").  Other statements generically describe how DAFs operate and are not rendered false by one dispute with one customer, particularly where, as here, Plaintiff admits that the Fund operated as he expected for 19 years.  Finally, there is no possible reliance because the website links included in the Complaint make clear that the cited content is from 2025, long after Plaintiff became Fund advisor.

## C.    The FAC Fails to Allege Justifiable Reliance

The negligent misrepresentation claim also fails because the Complaint does not allege Plaintiff's justifiable reliance on a Challenged Statement.  *Guardian Title Agency, LLC v. Matrix Cap. Bank*, 141 F. Supp. 2d 1277 (D. Colo. 2001) (dismissing a negligent misrepresentation claim for lack of justifiable reliance); *Lopez v. Cricket Commc'ns, Inc.*, 2012 WL 4936377, at *2–3 (D. Colo. Oct. 16, 2012) (limiting liability for negligent misrepresentation only where the plaintiff justifiably relied on information the defendant intended, or knew, would be used by the plaintiff in a specific transaction).

Here, Plaintiff alleges that he justifiably relied on the Challenged Statements because, had he known the truth, he would have transferred the Fund to another sponsor.  FAC ¶¶ 30, 97.  But that is a nonstarter because, under the Sponsorship Agreement and IRC, he had no legal right to transfer the Fund.  *See* FAC, Ex. 1.  So, he did not refrain from doing anything that he actually could have done.

## IV.    The FAC Fails to State a Claim Under the CCPA (Count IV)

The elements of a CCPA claim are that: (1) Defendant engaged in an unfair or deceptive trade practice; (2) the challenged practice occurred in the course of Defendant's business; (3) the practice significantly impacted the public as actual or potential consumers; (4) Plaintiff suffered injury to a legally protected interest; and (5) the practice caused Plaintiff's injury.  *See* C.R.S. § 6–1–105; *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998); *HealthONE of Denver, Inc. v. UnitedHealth Grp. Inc.*, 805 F. Supp. 2d 1115, 1120 (D. Colo. 2011) (requiring all five elements to state a claim).

A "deceptive trade practice," requires that Defendant "knowingly [made] a false representation" and that representation "induce[d] a party to act, refrain from acting, or have the capacity or tendency to attract consumers."  *Peterson v. USAA Life Ins. Co.*, 353 F. Supp. 3d 1099, 1112 (D. Colo. 2018), *aff'd*, 814 F. App'x 408 (10th Cir. 2020).  Plaintiff may not "simply parrot[] back the language of the [CCPA], coupled with a bare assertion that [Defendant] engaged in … deceptive trade practices" without providing

13

facts to support these allegations. *Peterson*, 353 F. Supp. 3d at 1112.[7]

Here, Plaintiff premises the CCPA claim on the same Challenged Statements discussed above. FAC ¶ 103 (basing claim on "other representations alleged herein"). But the Complaint fails to state a CCPA claim as to any of those statements.

*First*, the deceptive trade practice element is lacking because the Complaint fails to allege the existence of a materially false statement, as addressed above concerning negligent misrepresentation. *See supra* Argument § III.B (addressing falsity element).

*Second*, the causation element of a CCPA claim is lacking for the reasons set forth above. *See supra* Argument § III.C (addressing justifiable reliance element).

*Finally*, the third CCPA element—a practice that significantly impacts the public—is also absent. Colorado courts consistently dismiss CCPA claims that involve purely private disputes because the CCPA was enacted to regulate practices that target or impact the public. *See, e.g.*, *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 149–50 (Colo. 2003) (dispute between sophisticated parties did not significantly impact the public); *U.S. Welding, Inc. v. Burroughs Corp.*, 615 F. Supp. 554, 555–56 (D. Colo. 1985) (plaintiff could not invoke the CCPA as "an additional remedy to redress a purely private wrong"). Here, the Complaint posits that, after 19 years, Plaintiff and WaterStone entered a dispute over a single Fund. There are no factual allegations that WaterStone has similar disputes with anyone else or has

---

[7] A CCPA claim is subject to Federal Rule of Civil Procedure 9(b), which requires that the complaint "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *HealthONE of Denver, Inc.*, 805 F. Supp. 2d at 1120–21 (citing *Koch v. Koch Industries, Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (internal citation omitted)).

deceived or harmed the public.  Accordingly, this is a prototypical private dispute that is not actionable under the CCPA.  Plaintiff cannot alter the result by alleging that this case generated a newspaper article (FAC ¶ 110, n.1) and a post on social media by an unidentified (or, at least, obscured by Plaintiff) poster who has opinions about this case (FAC ¶ 111).  Those matters are irrelevant.  The significant public impact test does not turn on whether anyone in the public cares about this case, but whether the *challenged practice targets the public at large*.  *See Rhino Linings USA*, 62 P.3d at 150 (finding no significant public impact when a transaction is "no more than a private dispute").  Plaintiff merely alleges that, after 19 years, he personally had one dispute over one DAF when his access to the sponsor and the Fund was allegedly cut off.  He does not allege that anyone else has encountered anything similar, much less on a broad public basis.

**V.      Declaratory Judgment Fails Absent a Viable Underlying Claim (Count V)**

Declaratory judgment is a form of relief dependent on a viable underlying claim. *See Heron v. City & Cnty. of Denver*, 411 P.2d 314, 315–17 (1966) (dismissing standalone count seeking declaratory relief for lack of live controversy).  Declaratory judgment may not be used to bolster a legally deficient claim or to obtain an advisory opinion.  *Id*. Colorado federal courts evaluate whether declaratory judgment is duplicative of other claims or "independent of and separable from the underlying action." *Acuity v. Kinsale Ins. Co.*, 750 F. Supp. 3d 1229, 1242 (D. Colo. 2024).  Because Plaintiff's substantive claims fail for the above reasons, Count V fails as a matter of law.

<b><u>CONCLUSION</u></b>

The Court should dismiss the Complaint with prejudice.

15

DATED this 21st day of April, 2026

WILMER CUTLER PICKERING HALE AND DORR LLP

/s/ Matthew T. Martens
**Matthew T. Martens**
matthew.martens@wilmerhale.com
2100 Pennsylvania Ave. NW
Washington, DC 20037
Tel: 202.663.6000

/s/ Timothy Perla
**Timothy Perla**
timothy.perla@wilmerhale.com
60 State Street
Boston, MA 02109
Tel: 617.526.6696

/s/ Jack R. Hodge
**Jack R. Hodge**
jack.hodge@wilmerhale.com
1225 17th Street, Suite 2600
Denver, CO 80202
Tel: 720.598.3470

*Attorneys for Defendant CHRISTIAN COMMUNITY FOUNDATION, INC. d/b/a WaterStone*

16

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of April, 2026, I electronically filed a true and correct copy of the above and foregoing **DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

**Andrew Nussbaum**
**Edward A. Gleason**
**Robert J. Bucknam**
First & Fourteenth PLLC
2 N. Cascade., Suite 1430
Colorado Springs, CO 80903
Phone: (719) 428-3093
Email: andrew@first-fourteenth.com
ed@first-fourteenth.com
rob@first-fourteenth.com

*Attorneys for Plaintiff PHILIP PETERSON*

WILMER CUTLER PICKERING HALE
AND DORR LLP

/s/ Jack R. Hodge
**Jack R. Hodge**
jack.hodge@wilmerhale.com
1225 17th Street, Suite 2600
Denver, CO 80202
Tel: 720.598.3470

*Attorney for Defendant CHRISTIAN COMMUNITY FOUNDATION, INC. d/b/a WaterStone*

17