**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-00179-GPG-MDB

PHILIP G. PETERSON, in his capacity as Successor Advisor to the Peterson Family Stewardship Fund,

     *Plaintiff*,

v.

CHRISTIAN COMMUNITY FOUNDATION, INC. d/b/a WaterStone, a Colorado nonprofit corporation,

     *Defendant*.

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**
***ORAL ARGUMENT REQUESTED***

---

**TABLE OF CONTENTS**

INTRODUCTION.................................................................................................... 1

FACTUAL BACKGROUND ................................................................................... 1

ARGUMENT .......................................................................................................... 2

I.   The Complaint pleads a claim for breach of contract............................................. 2

    A.   WaterStone's motion mischaracterizes the contract. ...................................... 3

    B.   Plaintiff is a party to the agreement or agreements governing the Fund. ......... 4

    C.   WaterStone has breached the parties' agreements. ........................................ 5

    D.   Plaintiff has adequately pleaded damages. ...................................................... 6

II.   Plaintiff pleads a claim for breach of the duty of good faith and fair dealing............. 7

III.   Plaintiff pleads a claim for negligent misrepresentation. .......................................... 8

    A.   The FAC adequately alleges numerous false statements. .............................. 9

    B.   The economic loss rule does not bar Plaintiff's claim...................................... 11

i

C.    The complaint adequately alleges justifiable reliance. ....................................12

IV.   Plaintiff pleads a claim for violation of the CCPA. .....................................................13

A.    Plaintiff adequately alleged a deceptive trade practice. .................................14

B.    The challenged practice occurred in the course of WaterStone's business. ....14

C.    Plaintiff adequately alleged significant public impact......................................14

V.    Plaintiff pleads a plausible claim for declaratory judgment. ....................................15

**CONCLUSION** ............................................................................................................... **15**

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1881 Extraction Co. LLC v. Kiinja Corp.*,
  660 F. Supp. 3d 1059 (D. Colo. 2023) ........................................................................ 13

*ADT Sec. Servs., Inc. v. Premier Home Prot., Inc.*,
  181 P.3d 288 (Colo. App. 2007) ...................................................................................... 7

*Allen v. Steele*,
  252 P.3d 476 (Colo. 2011) .......................................................................................... 8, 9

*Alpine Bank v. Hubbell*,
  555 F.3d 1097 (10th Cir. 2009) ...................................................................................... 8

*Amoco Oil Co. v. Ervin*,
  908 P.2d 493 (Colo. 1995) ............................................................................................. 7

*Athena Botanicals, LLC v. Green Earth Techs., L.L.C.*,
  2024 WL 1257407 (D. Colo. Mar. 25, 2024) ................................................................ 10

*Bd. of Cnty. Comm'rs v. Brown Grp. Retail, Inc.*,
  598 F. Supp. 2d 1185 (D. Colo. 2009) .......................................................................... 12

*Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*,
  353 F. Supp. 3d 1070 (D. Colo. 2018) .......................................................................... 15

*BRW, Inc. v. Dufficy & Sons, Inc.*,
  99 P.3d 66 (Colo. 2004) ................................................................................................ 12

*Casanova v. Ulibarri*,
  595 F.3d 1120 (10th Cir. 2010) ...................................................................................... 2

*City of Golden v. Parker*,
  138 P.3d 285 (Colo. 2006) ........................................................................................... 7, 8

*Fairbairn v. Fid. Invs. Charitable Gift Fund*,
  2021 WL 754534 (N.D. Cal. Feb. 26, 2021) ................................................................... 5

*Grossman v. Novell, Inc.*,
  120 F.3d 1112 (10th Cir. 1997) .................................................................................... 10

## TABLE OF AUTHORITIES (continued)

**Page(s)**

**Cases (continued)**

*Hall v. Walter*,
  969 P.2d 224 (Colo. 1998)............................................................................ 13, 14, 15

*Jardel Enters., Inc. v. Triconsultants, Inc.*,
  770 P.2d 1301 (Colo. App. 1988)............................................................................ 12

*Pinkert v. Schwab Charitable Fund*,
  48 F.4th 1051 (9th Cir. 2022)................................................................................ 5, 6

*Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*,
  62 P.3d 142 (Colo. 2003).......................................................................................... 14

*Town of Alma v. AZCO Constr., Inc.*,
  10 P.3d 1256 (Colo. 2000)........................................................................................ 11

*Univ. of Denver v. Doe*,
  547 P.3d 1129 (Colo. 2024) ....................................................................................... 2

**Statutes**

26 U.S.C. § 4966(d)(2)(A)(iii) .................................................................................... 5, 15
28 U.S.C. § 2201(a) ......................................................................................................... 15
C.R.S. § 6-1-105 .............................................................................................................. 13
C.R.S. § 6-1-105(1)(e)..................................................................................................... 14

**Rules**

Federal Rule of Civil Procedure 8(d)(2).......................................................................... 12

**Other Authorities**

*Avoiding Misuse of Donor Advised Funds,*
  *58 Clev. St. L. Rev. 59 (2010)*.................................................................................... 5

Restatement (Second) of Contracts § 205 ...................................................................... 7

## INTRODUCTION

The first sentence of WaterStone's Motion to Dismiss (ECF No. 34, filed April 21, 2026) states, "WaterStone is a non-profit organization that sponsors **donor advised** funds ('DAFs'), **under which the advisor can recommend (but has no right to require) contributions to other charities**." However, in the case of Plaintiff's $20 million fund, WaterStone contends that the advisor **cannot** "advise," "recommend contributions to other charities," or even communicate about the fund. Not only that, WaterStone would have this Court rule that it is not accountable to the advisor or anyone else, even the Court, for its handling of the Fund, regardless of whatever might be provided in contract and incorporated policy documents it is withholding. If that position were upheld, it would render the "advisory" component that is the essence of a "donor-advised" fund a fiction, and leave WaterStone free to do as it pleases with the billions of dollars in charitable assets it holds, without any oversight or accountability. The Court should deny the Motion.[1]

## FACTUAL BACKGROUND

Plaintiff incorporates by reference the factual allegations set forth in his First Amended Complaint (ECF No. 32) ("FAC") at ¶¶ 1–61. In brief, Gordon J. Peterson established the Peterson Family Stewardship Fund in 2005 as a donor-advised fund sponsored by WaterStone, a Colorado Springs-based Christian nonprofit, and in November 2017 amended the governing agreements to designate his wife, Ruth Peterson, and Plaintiff Philip Peterson as co-equal advisors, with WaterStone agreeing to the amendment and representing that Plaintiff would have full advisory authority, good-faith consideration of his grant recommendations, inclusion in Fund administration discussions, and access to all Fund information. FAC ¶¶ 1, 18–20, 25–28. Upon Ruth Peterson's death in

---

[1] Plaintiff respectfully requests the Court set oral argument on the motion.

1

2021, Plaintiff became the sole advisor of the Fund, which held over $21 million in charitable assets as of December 2023, and from 2017 through 2023 WaterStone treated Plaintiff as the Fund's advisor and uniformly approved his grant recommendations. FAC ¶¶ 17, 33–34, 70. In March 2024, however, WaterStone abruptly revoked Plaintiff's access, ignored a pending $1 million grant request, and made no distributions from the Fund in 2024 for the first time in its history; CEO Ken Harrison then directed Plaintiff never to contact WaterStone again, and declared that WaterStone "owed no duties" to him and that advisory rights belonged solely to Mr. Harrison rather than the donor, and WaterStone has since refused to accept Plaintiff's grant recommendations, communicate with him, or provide the Fund's governing documents, policies, or any accounting of its assets and distributions. FAC ¶¶ 21, 23, 32, 35–39, 44–45.

## ARGUMENT

On a Rule 12(b)(6) motion, courts must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (citations omitted).

## I.    The Complaint pleads a claim for breach of contract.

To state a claim for breach of contract, a plaintiff must allege: "(1) the existence of a contract, (2) the plaintiff's performance of the contract . . . , (3) the defendant's failure to perform the contract, and (4) the plaintiff's damages as a result of the defendant's failure to perform the contract." *See Univ. of Denver v. Doe*, 547 P.3d 1129, 1139 (Colo. 2024). WaterStone does not dispute the existence of an agreement(s) or that Plaintiff and his father performed their obligations. WaterStone instead contends that Plaintiff is not a party to the contract, that no contractual term was breached, and that Plaintiff has not suffered damages. Each of these contentions fails.

2

### A.  WaterStone's motion mischaracterizes the contract.

The central premise of WaterStone's breach of contract argument is that the single "Agreement" paragraph in Gordon Peterson's 2005 Application constitutes the entire contract between the parties. *See* Mot., p. 3–6. That premise is wrong. The Complaint does not allege that the Application is the contract; it alleges that Gordon Peterson "submitted an Application and Purpose Statement attached hereto as Exhibit 1, reflecting his … objectives in establishing the Fund." FAC ¶ 19. That is a description of an application—not an allegation that the Application constitutes the parties' contract. The very next paragraph alleges that, "following his application, Gordon Peterson entered into an agreement or agreements with WaterStone that identified the parties' respective rights and incorporated WaterStone's policies and procedures by reference." FAC ¶ 20. That is the allegation about the parties' contractual relationship. WaterStone ignores it entirely.

WaterStone's own conduct confirms that the Application is not the full contract. Plaintiff has repeatedly requested a copy of the Fund agreement or agreements, and without denying their existence, WaterStone refuses to provide them. *See* FAC, ¶ 21. In Plaintiff's conversations with WaterStone about the Application and the Fund agreements, WaterStone never indicated that the Application is also the Fund agreement or agreements. *See* FAC, ¶ 22. WaterStone has also refused to provide a copy of its policies and procedures to Plaintiff. *See* FAC, ¶ 23.

The parties' course of dealing confirms this. They amended the Fund agreement as needed, including in 2017 when Gordon Peterson added Plaintiff as a co-equal advisor, and WaterStone agreed. *See* FAC ¶¶ 24–27. The parties' contract consists of a series of agreements, including the initial Fund agreement, the 2017 amendment,  agreements

3

to fund the Fund,[2] WaterStone's policies and procedures, and WaterStone's representations to Gordon Peterson and Plaintiff. *See* FAC ¶ 66.

WaterStone invokes the rule that where a written instrument is attached to a complaint, its terms control over contrary allegations. Mot., p. 6. But Plaintiff's allegations do not conflict with the Application. Plaintiff does not allege that the Application grants him binding control over the Fund. Rather, he alleges that the broader contractual agreements, which WaterStone refuses to produce, includes terms governing communication, accountings, good-faith consideration of grant recommendations, and related obligations. *See* FAC, ¶¶ 66–69. The Application's agreement paragraph includes no indication that it serves as the complete and exclusive agreement between the parties. *See* FAC, Ex. 1. Plaintiff alleges that his rights are consistent with the terms of the full agreement, *see* FAC, ¶ 69, and at this stage those well-pleaded allegations must be accepted as true.[3]

### B. Plaintiff is a party to the agreement or agreements governing the Fund.

WaterStone's contention that Plaintiff is not a party to the contract contradicts both the 2017 amendment and WaterStone's years-long course of conduct. In 2005, Gordon

---

[2] There exist separate, undislosed agreements between the parties concerning the funding of the Fund. These contracts are also part of the parties' agreements.

[3] Even if the Application were the sum total of the contract, and it is not, the Application's language is at odds with WaterStone's position. The Application provides that successor advisors shall have "the same advisory rights as the Fund Adviser," but does not define what those rights are, leaving their scope to be determined by the broader course of conduct and contractual relationship, WaterStone's policies, and industry usage. *See* FAC, Ex. 1, at 1. It allows the donor and his successor advisors to choose an investment adviser. *See id.* It requires WaterStone to "abide by the policies and conditions set forth by the Christian Community Foundation, which in some instances, exceed government requirements." *See id.* at 2. And while the Application states that WaterStone has custody and control of the donated assets, the donor and successor advisors retain advisory rights that WaterStone is bound to honor. *Id.* The Application's language, read as a whole, supports rather than undermines Plaintiff's claim that WaterStone assumed enforceable obligations to its fund advisors beyond what is explicitly stated in the Application.

Peterson established the Fund and assigned successor advisors. *See* FAC ¶¶ 18–19; FAC, Ex. 1. "[I]n the event of [Gordon's] disability or demise," the successor advisors had "the same advisory rights as [Gordon]." *See id.* In 2017, Gordon amended the contract to appoint Ruth and Philip Peterson as co-equal advisors. *See* FAC ¶ 27. Today, Plaintiff is the sole remaining advisor and Gordon's successor-in-interest. FAC ¶ 33.

### C. WaterStone has breached the parties' agreements.

Donor advised funds (DAFs) are creatures of contract. *See Michael J. Hussey*, Avoiding Misuse of Donor Advised Funds, 58 Clev. St. L. Rev. 59, 60 (2010) (explaining that DAFs are contractual relationships between a donor and a public charity). The Internal Revenue Code defines a DAF as a fund or account with respect to which a donor or designee "has, or reasonably expects to have, advisory privileges with respect to the distribution or investment of amounts held in such fund or account." 26 U.S.C. § 4966(d)(2)(A)(iii); *see also* FAC, ¶ 16. The central question to this case is whether a donor advisor retains enforceable advisory and contractual rights. The answer is yes. "When donors contribute to their DAF account, the nonprofit organization takes legal title to the assets, **but the donors retain the right to advise how the donated funds are invested and ultimately distributed to charitable organizations.**" *Fairbairn v. Fid. Invs. Charitable Gift Fund*, 2021 WL 754534, at *2 (N.D. Cal. Feb. 26, 2021) (emphasis added).

WaterStone relies heavily on *Pinkert v. Schwab Charitable Fund*, 48 F.4th 1051 (9th Cir. 2022), for its argument that "the sponsoring organization is not legally obligated to comply with the donor's advice." *See* Mot., p. 5. But *Pinkert* does not support dismissal. *Pinkert* addressed a narrow question: whether an advisor had Article III standing to challenge the fee structure charged by a sponsoring organization. *See* 48 F.4th at 1053. This case is different. WaterStone does not challenge Plaintiff's Article III standing. And Plaintiff is not asserting that the IRC alone compels WaterStone to give good faith consideration

to his recommendations. Plaintiff's claim is that WaterStone assumed contractual, common law, and statutory obligations, through the parties' agreements, course of dealing, and representations, to communicate with him, give good-faith consideration to his recommendations, and otherwise honor his advisory role. Nothing in the IRC or in *Pinkert* prohibits a sponsoring organization from voluntarily assuming such obligations by contract. To the contrary, the entire DAF model depends on sponsoring organizations making and honoring such commitments to attract donors. Notably, Judge Bress's concurrence in *Pinkert* recognized that claims like Plaintiff's are meritorious. Judge Bress explained that an advisor would have claims against a sponsoring organization if it "failed to consider the plaintiff's nonbinding recommendations or … [made] misrepresentations to induce plaintiff to open his donor advised fund." *Pinkert*, 48 F.4th at 1056-57 (Bress, J., concurring). That is precisely this case.

The FAC alleges that WaterStone breached the contract in numerous specific ways, including withdrawing its recognition of Plaintiff as advisor; refusing to communicate with Plaintiff; failing to consider or explain its refusal to approve eligible grant recommendations; failing to provide accountings; and assessing unauthorized fees. *See* FAC ¶ 73. WaterStone removed Plaintiff's access to Fund information, *see* FAC ¶ 35; its CEO told Plaintiff never to contact WaterStone again, *see* FAC ¶ 45; it ceased all communication about the Fund, *see* FAC ¶ 44; it made no charitable donations in 2024, *see* FAC ¶¶ 36, 38–40; and it refused to provide the governing agreements, *see* FAC ¶ 74.

### D.  Plaintiff has adequately pleaded damages.

WaterStone's refusals have caused Plaintiff to lose the ability to exercise his advisory rights and responsibilities. *See* FAC, ¶ 75. Plaintiff's damages include compensatory, expectancy, consequential, and/or nominal damages. *See* FAC, ¶ 80. Plaintiff has also

alleged entitlement to equitable relief, including specific performance, injunctive relief, and an accounting. *See* FAC, ¶¶ 76–80.

**II.      Plaintiff pleads a claim for breach of the duty of good faith and fair dealing.**

Colorado law implies a covenant of good faith and fair dealing in every contract. *See Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995). The covenant requires each party to exercise its contractual discretion "in such a manner that each party will attain their reasonable expectations under the contract." *Id.* at 499. A party breaches the covenant "when [it] uses discretion conferred by the contract to act dishonestly or to act outside of accepted commercial practices to deprive the other party of the benefit of the contract." *ADT Sec. Servs., Inc. v. Premier Home Prot., Inc.*, 181 P.3d 288, 293 (Colo. App. 2007). "[E]vasion of the spirit of the bargain, . . . willful rendering of imperfect performance, . . . and interference with or failure to cooperate in the other party's performance" all violate the covenant. Restatement (Second) of Contracts § 205 cmt. d (1981).

*City of Golden v. Parker*, 138 P.3d 285 (Colo. 2006), is on point. There, the Colorado Supreme Court held that economic incentive agreements between the City of Golden and private parties created enforceable good-faith obligations, notwithstanding a TABOR provision stating that payments "were subject to annual appropriations by the City Council." *See id.* at 288–89. Even though the clause did not **require** the City to make any particular payment, the City could not refuse payment for **any** reason; rather, it was required to make its appropriation decisions in good faith, a duty enforceable in a civil suit for damages. *See id* at 293. Because the private parties had "invested significant funds … in reliance on the terms of the Agreements," the agreements created a right to have the City "honor their reasonable expectations." *See id.* at 293–94.

So too here. WaterStone points to the Application's statement that "our communication regarding the fund is advisory only and the ultimate decisions and control relative

7

to each of these issues are the responsibility of [WaterStone]" as proof that it owes no duty to honor Plaintiff's advisory rights. *See* FAC, Ex. 1, at 2. Just as the City pointed to the TABOR provision in *Parker* as license to withhold payments at will, WaterStone points to the "advisory only" language in the Application to try to justify its utterly ignoring a donor advisor. But *Parker* holds that such contractual discretion does not eliminate the duty of good faith. A contract that may not require a party to take any particular action because of a discretionary provision nevertheless requires the party to exercise that discretion in good faith, and that duty is enforceable in court. *See Parker*, 138 P.3d at 293.

The FAC alleges that WaterStone exercised its discretion in bad faith. Supported by statute, by the parties' agreements, and by WaterStone's course of conduct over nearly two decades, Plaintiff had the reasonable expectation that his advisory recommendations would receive good-faith consideration. *See* FAC, ¶¶ 16, 67, 69. Instead, WaterStone ignored and rebuffed him at every turn, as detailed in FAC ¶¶ 36-39, 44–45, 84.

WaterStone's reliance on *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1104–05 (10th Cir. 2009), is misplaced. *See* Mot., p. 7. In *Alpine Bank*, the court rejected an implied covenant claim because the plaintiffs sought specific relief that the contract expressly denied them. *See id.* at 1105. Here, no such contradiction exists. The Application does not deny Plaintiff the right to communicate with WaterStone, to receive information about the Fund, to move the Fund, or to have his recommendations considered in good faith. To the contrary, the Application expressly contemplates that the donor and successor advisors will communicate advisory recommendations to WaterStone. *See* FAC, Ex. 1.

## III.  Plaintiff pleads a claim for negligent misrepresentation.

WaterStone does not dispute the first element of a claim for negligent misrepresentation is present here—that it made specific representations to Plaintiff and his father in the course of WaterStone's "business, profession or employment." *See Allen v. Steele*,

8

252 P.3d 476, 482 (Colo. 2011). Nor does WaterStone dispute the third or fourth ele-ments—that it made the representations alleged in the Complaint for the guidance of Mr. Peterson and his father in a business transaction, knowing that they trusted WaterStone's representations. *See id.* WaterStone disputes only the second and fifth elements—that its representations were false and that Plaintiff justifiably relied on them. *See id.*

### A.  The FAC adequately alleges numerous false statements.

The FAC identifies numerous affirmative representations of fact that WaterStone made to induce Plaintiff and his father to participate in and maintain the Fund. WaterStone publicly described its DAFs as operating "like a charitable bank account" where donors "recommend grants to the charities of your choice on your timeline," FAC ¶ 10, and made (and continues to make) these and similar representations to its customers "for several decades, including to Plaintiff," FAC ¶¶ 12–13. More specifically, in November 2017, WaterStone representative John Mulder represented that Plaintiff would be recognized as the Fund's advisor; would have the right to make grant recommendations that Water-Stone would consider in good faith; would be included in discussions about grant-making, investment strategy, and Fund administration; would receive timely communications; would have access to all Fund information; and could move the Fund to a different spon-soring organization. FAC ¶ 93; *see also* FAC ¶ 29 (WaterStone represented it "would operate the Fund in accordance with its policies and procedures").

WaterStone's primary argument for putting these statements aside is that a state-ment's truth must be evaluated at the time it is made, and because WaterStone treated Plaintiff and his father as advisors for years, the representations must have been true when uttered. Mot. at 10–11. This argument lacks merit.

First, WaterStone's CEO stated that the representations were false. The FAC al-leges that Mr. Harrison told Plaintiff that WaterStone "owed no duties to Plaintiff," "had no

obligation to include Plaintiff in the process of grant-making or fund administration," "could shut off Plaintiff's access to Fund information at any time for any reason without cause or explanation," and "had no obligation to communicate with Plaintiff or consider his grant recommendations in good faith." FAC ¶ 32. Mr. Harrison stated that any rights an advisor had were "exercised solely at Mr. Harrison's discretion." *Id.* That a statement's falsity is measured when a statement is made thus supports Plaintiff, not WaterStone. Water-Stone's stated position is that it never owed any duties to its advisors. Mot. at 1–2. Indeed, WaterStone goes so far as to claim that is what the IRC demands. Mot. at 5. WaterStone's representations were thus false at the very moment they were made.

Second, WaterStone's treatment of the transferability representation (FAC ¶ 93F) distorts the Complaint's allegations. WaterStone claims that the conversation described in FAC ¶¶ 55–57 actually communicated that the Fund could not be transferred, because Mr. Mulder noted that the other fund was not "as large as your father's." Mot. at 11–12. But that is not what the Complaint alleges or implies. The FAC alleges that Mr. Mulder described a situation where WaterStone "would facilitate moving the account" for another fund's advisors. FAC ¶ 56. The remark about the Fund's larger size is ambiguous—it could refer to logistical complexity rather than impossibility, FAC ¶ 57—and this Court cannot resolve that ambiguity against Plaintiff on a motion to dismiss.

WaterStone's reliance on *Athena Botanicals, LLC v. Green Earth Techs., L.L.C.*, 2024 WL 1257407 (D. Colo. Mar. 25, 2024), and *Grossman v. Novell, Inc.*, 120 F.3d 1112 (10th Cir. 1997), is misplaced. *Athena Botanicals* involved findings made after a full bench trial, and the representations found non-actionable there were predictions about future events: promises to invest capital and projections that a machine "would increase pro-duction." 2024 WL 1257407, at *8–13. WaterStone's representations are nothing like that. They were affirmative statements about the present characteristics of a WaterStone DAF

and Plaintiff's advisory role. *See* FAC ¶¶ 28, 93. These describe how an ongoing relationship operates, and their truth can be evaluated as of the time they were made.

### B.  The economic loss rule does not bar Plaintiff's claim.

WaterStone contends that the economic loss rule bars Plaintiff's negligent misrepresentation claim because it is "rooted in WaterStone's alleged breach of its contractual duties and performance." Mot. at 9. This mischaracterizes Plaintiff's claim. The Complaint does not allege that WaterStone negligently performed its contractual obligations. Rather, Plaintiff alleges that WaterStone negligently made misrepresentations of fact that induced Plaintiff and his father to enter into the advisory relationship and to maintain the Fund at WaterStone, representations that were independent of any contractual performance.

In November 2017, before Plaintiff became a co-equal advisor, Mr. Mulder made specific representations about what Plaintiff's advisory role would entail: that Plaintiff would be recognized as the advisor, would have full authority to make grant recommendations considered in good faith, would be included in Fund discussions, and would be granted online access to Fund account information. FAC ¶ 28. Plaintiff relied on these representations in agreeing to become the advisor and in maintaining the Fund at WaterStone. FAC ¶ 30. These are classic pre-contractual inducement representations, made to persuade Plaintiff to enter a relationship, not as part of performing under one. The economic loss rule does not bar tort claims arising from such representations because the duty at issue is an independent tort duty not to induce assent through false statements, not a duty derived from the contract itself.

The decisions WaterStone cites confirm this. *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1263 & n.10 (Colo. 2000), recognized that negligent misrepresentation falls outside the economic loss rule because it is "based not on principles of contractual obligation but on principles of duty and reasonable conduct" (citations omitted); *see also*

11

*Jardel Enters., Inc. v. Triconsultants, Inc.*, 770 P.2d 1301, 1304 (Colo. App. 1988) (one who communicates representations knowing they will be relied upon "may be subject to both tort and contract liability for economic loss"). And in *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 74 (Colo. 2004), the Colorado Supreme Court held that a negligent mis-representation claim is barred by the economic loss rule only if the parties specifically "memorialized" the duty of care in their contract. Here, Plaintiff does not allege that Water-Stone negligently administered the Fund; he alleges that WaterStone made false state-ments of fact that induced him to become the Fund's advisor in the first instance. FAC ¶¶ 25–30, 93. The duty not to make false representations to induce a party to enter a relationship exists independently of any contract.

Two additional points foreclose dismissal. First, Federal Rule of Civil Procedure 8(d)(2) permits a plaintiff to plead alternative theories of relief, even if those theories are in tension. *Bd. of Cnty. Comm'rs v. Brown Grp. Retail, Inc.*, 598 F. Supp. 2d 1185, 1193 (D. Colo. 2009). Second, WaterStone has refused to produce the agreement or agree-ments governing the parties' relationship, FAC ¶ 74, making it impossible for the Court to determine at this stage whether any contract "memorialized" the relevant duty of care.

### C. The complaint adequately alleges justifiable reliance.

WaterStone's final argument is that Plaintiff cannot allege justifiable reliance be-cause, under the Sponsorship Agreement and IRC, he had "no legal right to transfer the Fund," and therefore "did not refrain from doing anything that he actually could have done." Mot. at 13. This argument fails.

First, Plaintiff's reliance is not limited to transferability. The FAC alleges that Plaintiff relied on WaterStone's representations "in agreeing to serve as advisor to the Fund, in submitting grant recommendations to WaterStone, and in refraining from seeking to trans-fer the Fund to another sponsor." FAC ¶ 97. Had Plaintiff known the representations were

12

false, he would not have agreed to become the advisor and would not have maintained the Fund at WaterStone. FAC ¶ 30.

Second, whether Plaintiff had the legal ability to transfer the Fund is itself a disputed issue that cannot be resolved at this stage. The FAC alleges that WaterStone's own representative told Plaintiff about a prior instance in which WaterStone facilitated a transfer, FAC ¶¶ 55–56, and when Plaintiff requested a transfer, WaterStone refused—not because transfer was legally impossible, but because it chose not to honor its representation. FAC ¶ 59. Resolving this question requires examination of the full contractual relationship and the policies and procedures that WaterStone is withholding.

Third, justifiable reliance is inherently fact-intensive and generally reserved for the trier of fact. *1881 Extraction Co. LLC v. Kiinja Corp.*, 660 F. Supp. 3d 1059, 1072 (D. Colo. 2023). At the motion-to-dismiss stage, Plaintiff need only allege facts plausibly establishing his reliance was reasonable. A senior WaterStone representative made specific representations about the advisory relationship, WaterStone conformed to those representations for six years, and Plaintiff relied on them in structuring his involvement with the Fund. FAC ¶¶ 28, 30, 34, 70, 97. These allegations are more than sufficient.

## IV.     Plaintiff pleads a claim for violation of the CCPA.

The Colorado Consumer Protection Act ("CCPA") prohibits deceptive trade practices related to the sale or advertisement of consumer services. C.R.S. § 6-1-105. To establish a CCPA claim, a plaintiff must allege that: (1) the defendant engaged in an unfair or deceptive trade practice; (2) the challenged practice occurred in the course of defendant's business; (3) the practice significantly impacts the public as actual or potential consumers; (4) the plaintiff suffered injury to a legally protected interest; and (5) the challenged practice caused the plaintiff's injury. *See Hall v. Walter*, 969 P.2d 224, 235 (Colo.

13

1998). WaterStone only argues that Plaintiff failed to meet the first three elements.

### A.  Plaintiff adequately alleged a deceptive trade practice.

As detailed in Section III.A,  the FAC identifies many false representations that WaterStone made to induce Plaintiff to participate in and maintain the Fund. *See* FAC ¶¶ 10, 12–13, 28–29, 93. These representations were knowingly or recklessly false, satisfying the deceptive-trade-practice element of the CCPA. *See* C.R.S. § 6-1-105(1)(e). WaterStone's argument that its representations were rendered truthful by six years of compliant conduct gets the analysis exactly backwards: those six years demonstrate that WaterStone chose to act consistently with representations it did not consider binding until it decided otherwise, which is the kind of deceptive conduct the CCPA targets.

### B.  The challenged practice occurred in the course of WaterStone's business.

WaterStone's representations to Plaintiff were made in the course of ongoing discussions involving the Fund, *see* FAC ¶¶ 25–29, 101, 103, and Plaintiff relied on them to make key decisions regarding the Fund, including maintaining it at WaterStone rather than transferring it elsewhere. *See* FAC ¶¶ 13, 30, 104. WaterStone does not seriously dispute this element, and with good reason: soliciting and administering donor-advised funds is WaterStone's core business. *See* FAC ¶ 8.

### C.  Plaintiff adequately alleged significant public impact.

Multiple national and local news sources are covering this lawsuit's implications for the DAF industry. *See* FAC ¶ 110. Legal and financial professionals have warned that if WaterStone succeeds, it "could send a real chill through a $325B+ DAF ecosystem that already struggles with trust and transparency." FAC ¶ 111. This corroborates that WaterStone's challenged practice has the "capacity" to affect the public at large. *Rhino Linings USA*, *Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 149–50 (Colo. 2003). WaterStone sponsors funds for donors throughout Colorado and the United States, *see* FAC

14

¶ 101, and given its insistence that advisors retain no rights, *see* FAC ¶ 113, every donor who relied on its representations is a potential victim of the same deceptive practice.

WaterStone's representations are not specific to Plaintiff; they are how WaterStone markets to the public. *See* FAC ¶¶ 10, 12. On the strength of those representations, WaterStone has solicited over $3.2 billion in charitable contributions. *See* FAC ¶ 108. If WaterStone's position is correct, then every one of those representations is false, and every donor who relied on them was deceived. That is a practice that "significantly impacts the public as actual or potential consumers." *See* FAC ¶ 109; *Hall*, 969 P.2d at 235.

## V.    Plaintiff pleads a plausible claim for declaratory judgment.

Defendant's sole argument for dismissal of Plaintiff's claim for declaratory judgment is that his other, substantive claims fail. *See* Mot., p. 15. Under 28 U.S.C. § 2201(a), a court "may declare the rights and other legal relations of any interested party seeking such declaration" so long as an "actual controversy" exists and the court has jurisdiction over the dispute. An actual controversy exists here. The parties have a genuine and on-going dispute about their respective rights and obligations under the contract governing the Fund as well as the rights of fund advisor under the Internal Revenue Code. That dispute exists separate and apart of the other claims at issue in the case. *See* FAC ¶ 119. For example, the parties dispute what it means to be an advisor under the IRC. They also dispute what ongoing duties Waterstone owed Plaintiff under 26 U.S.C. § 4966(d)(2)(A)(iii) as the Fund advisor. *See Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*, 353 F. Supp. 3d 1070, 1088 (D. Colo. 2018). Even if Plaintiff's claims were dismissed, declaratory relief remains appropriate. *See* 28 U.S.C. § 2201(a).

## CONCLUSION

For the foregoing reasons, WaterStone's motion to dismiss should be denied.

DATED this 12th day of May, 2026.

_/s/Andrew Nussbaum_
Andrew Nussbaum
Edward A. Gleason
Robert J. Bucknam
First & Fourteenth PLLC
2 N. Cascade Ave., Suite 1430
Colorado Springs, CO 80903
Phone: (719) 428-3093
Email: andrew@first-fourteenth.com
      ed@first-fourteenth.com
      rob@first-fourteenth.com
_Attorneys for Plaintiff Philip Peterson_

16

## CERTIFICATE OF SERVICE

I certify that on May 17, 2026, I filed the foregoing Response in Opposition to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint with the Clerk of the Court using the CM/ECF system, which will send electronic notification to all counsel of record.

*s/Robert J. Bucknam*
Robert J. Bucknam
First & Fourteenth PLLC

17