**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-CV-00179-GPG-MDB

PHILIP G. PETERSON, in his capacity as
Successor Advisor to the Peterson Family
Stewardship Fund,

     *Plaintiff,*

v.

CHRISTIAN COMMUNITY FOUNDATION, INC.
d/b/a WaterStone, a Colorado nonprofit corporation,

     *Defendant.*

---

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**

---

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

ARGUMENT ......................................................................................................... 1

I.  Plaintiff Still Fails to State a Claim for Breach of Contract (Count I) ....................... 1

II.  Plaintiff Still Fails to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II) ................................................................................. 3

III.  Plaintiff Still Fails to State a Negligent Misrepresentation Claim (Count III) ........... 4

    A.  The Economic Loss Rule Bars the Claim ...................................................... 4

    B.  Plaintiff Still Fails to Allege the Existence of a False Statement ..................... 5

    C.  Plaintiff Still Fails to Allege Justifiable Reliance ........................................... 5

IV.  Plaintiff Still Fails to State a Claim Under the CCPA (Count IV) ........................... 6

    A.  Plaintiff Still Fails to Allege Deceptive Trade Practice .................................. 6

    B.  Plaintiff Still Fails to Allege Significant Public Impact ................................... 7

V.  Declaratory Judgment Fails Absent a Viable Underlying Claim (Count V) ............ 8

CONCLUSION ..................................................................................................... 8

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Alpine Bank v. Hubbell*,
555 F.3d 1097 (10th Cir. 2009)............................................................................. 3, 4

*Athena Botanicals, LLC v. Green Earth Techs., L.L.C.*,
2024 WL 1257407 (D. Colo. Mar. 25, 2024)......................................................... 5

*Carraway v. State Farm Fire & Cas. Co.*,
2023 WL 5374393 (10th Cir. Aug. 22, 2023) ........................................................ 2

*City of Golden v. Parker*,
138 P.3d 285 (Colo. 2006) .................................................................................... 3

*Exam. Bd. of Pro. Home Inspectors v. Int'l Ass'n of Certified Home
Inspectors*, 519 F. Supp. 3d 893 (D. Colo. 2021) ................................................. 7

*Orback v. Hewlett-Packard Co.*,
909 F. Supp. 804 (D. Colo. 1995).......................................................................... 2

*Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*,
62 P.3d 142 (Colo. 2003) ....................................................................................... 7

*Soderlun v. Pub. Serv. Co. of Colorado*,
944 P.2d 616 (Colo. App. 1997) ............................................................................ 3

**STATUTES**

26 U.S.C. § 4966(d)(2)(A) ................................................................................................ 6

Case No. 1:26-cv-00179-GPG-MDB    Document 42    filed 05/26/26    USDC Colorado    pg 4 of 14

## INTRODUCTION

Plaintiff's Opposition to WaterStone's Motion to Dismiss ("MTD") does not cure the defects in his First Amended Complaint ("FAC").  Instead, it confirms that Plaintiff's contract claims are improperly premised on asserted obligations that appear nowhere in the parties' Agreement, which grants WaterStone full authority over all "ultimate decisions and control."  *See* FAC, Ex. 1 at 2.  Plaintiff's Opposition also fails to identify any false statements to support his negligent misrepresentation and Colorado Consumer Protection Act ("CCPA") claims.  The Court should therefore dismiss the FAC.

## ARGUMENT

### I.    Plaintiff Still Fails to State a Claim for Breach of Contract (Count I)

The MTD demonstrated that the breach of contract claim fails because it asserts that WaterStone breached obligations that appear nowhere in the parties' "Agreement," attached as Exhibit 1 to the Complaint.  MTD at 4–6.  Conceding the point, Plaintiff makes essentially no attempt to argue that WaterStone breached any term of that Agreement.  Nor could he, because by its plain terms it accords Plaintiff no binding rights.  *Id.*  Nothing in the Opposition overcomes this fatal flaw.

Instead, Plaintiff first attempts to avoid dismissal by recharacterizing the Agreement, *see* FAC, Ex. 1, as an "application" and speculating that some other "agreement or agreements" may exist and contain some unspecified "rights."  Opp. at 3 (quoting FAC ¶ 20).  It is unclear what, if any, Rule 11-compliant basis Plaintiff has for

1

that assertion.[1]  Regardless, the unfounded assertion goes nowhere because the Opposition never explains when Plaintiff, in good faith, believes that any additional contract was signed, does not plead that he was a party to it or plead its written terms, or reconcile that assertion with the fact that in 2005 the parties expressly entered into an Agreement.  Courts dismiss breach of contract claims that fail to identify the contractual provision allegedly breached.  *See Carraway v. State Farm Fire & Cas. Co.*, 2023 WL 5374393, at *3 (10th Cir. Aug. 22, 2023) (affirming district court's grant of motion to dismiss on breach of contract claim where Plaintiff did not "identify any provision of the policy that [State Farm] breached").

Second, Plaintiff relies on WaterStone's past conduct—communicating with him, processing grants, and providing access—to argue that enforceable obligations exist. *See* Opp. at 3–4.  But those acts do not create contractual duties absent a pleaded obligation.  *See Orback v. Hewlett-Packard Co.*, 909 F. Supp. 804, 808–09 (D. Colo. 1995) (rejecting the notion that favorable conduct constitutes a contractual commitment), *aff'd*, 97 F.3d 429 (10th Cir. 1996).  The FAC does not identify any contract term requiring WaterStone to communicate with an advisor, provide accountings, process recommendations on demand, explain grant decisions, or permit transfer.  At most, Plaintiff alleges expectations based on past conduct—precisely the type of breach of contract theory that *Orback* forecloses.

---

[1] For instance, Plaintiff's speculation that an additional contract could exist is inconsistent with the 2017 letter that Plaintiff claims appointed him as advisor.  *See* FAC, Ex. 2.  That letter expressly sought to amend the 2005 application (which contains the Agreement) to make Plaintiff "Successor Advisement."  If there were another contract, this letter would have amended that other contract instead.

**II.      Plaintiff Still Fails to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II)**

Plaintiff next attempts to reframe this claim as one about the exercise of contractual discretion, but that framing does not cure the defect: the implied covenant cannot add new obligations that "vary or contradict" the contract.  *See Alpine Bank v. Hubbell*, 555 F.3d 1097, 1104–05 (10th Cir. 2009).  Plaintiff's theory does just that.  He does not identify bad faith exercise of discretion tethered to an existing contractual obligation; instead, he seeks to use the implied covenant to supply the obligation itself. *See* Opp. at 7–8.  He alleges that WaterStone acted in bad faith by delaying or withholding grants, failing to communicate, refusing to provide statements and disclosures, declining to discuss investments, and imposing "conditions not contemplated" by the Agreement.  FAC ¶ 84.  But those alleged duties are precisely the "new substantive terms" the implied covenant cannot supply—especially where the Agreement states the advisor's role is "advisory only" and "ultimate decisions and control" rest with WaterStone.  *See Soderlun v. Pub. Serv. Co. of Colorado*, 944 P.2d 616, 623 (Colo. App. 1997); FAC, Ex. 1.

Plaintiff's reliance on *City of Golden v. Parker* is misplaced.  *See* 138 P.3d 285 (Colo. 2006).  *Parker* addressed how a municipal entity must exercise discretion over a benefit contemplated in the contract.  *Id.* at 292–93.  It did not hold, as Plaintiff suggests, that the implied covenant can be used to create an underlying benefit where the contract itself does not provide one.  *Id.*  Here, the Agreement does not grant Plaintiff the rights he seeks to enforce.

The Tenth Circuit's decision in *Alpine Bank* reinforces this point.  *Alpine Bank* makes clear that the implied covenant cannot be used to impose duties that "vary or contradict" express provisions or to read into the contract the very obligations the parties did not adopt.  555 F.3d at 1104–05.  Here, imposing an implied duty to communicate, provide accountings, or process recommendations would do exactly that, in direct conflict with the Agreement's express allocation of "ultimate decisions and control" to WaterStone.

### III.    Plaintiff Still Fails to State a Negligent Misrepresentation Claim (Count III)

Plaintiff's negligent misrepresentation claim still fails because it is barred by the economic loss rule and because Plaintiff fails to allege that WaterStone made any false statement or that Plaintiff justifiably relied on such statements.

#### A.    The Economic Loss Rule Bars the Claim

Plaintiff argues that the economic loss rule does not bar his negligent misrepresentation claim because WaterStone's alleged false statements were "pre-contractual inducement representations, made to persuade Plaintiff to enter a relationship, not as part of performing under one."  Opp. at 11.  But Plaintiff identifies only one contract—the Agreement between his father and WaterStone establishing the Fund in 2005—and all misrepresentations alleged by Plaintiff related to the Fund and his role as advisor *post-date* this contract.  These challenged statements therefore arise from, and directly relate to, WaterStone's existing duties and performance under the governing Agreement.  Because the alleged duties are not independent of the contract, the economic loss rule bars Plaintiff's negligent misrepresentation claim.  *See* MTD at 9.

4

### B.    Plaintiff Still Fails to Allege the Existence of a False Statement

Plaintiff also fails to assert facts demonstrating that WaterStone's statements in 2017, regarding the characteristics of the Fund and Plaintiff's advisory role, were false when made.  *See* MTD at 10.  Plaintiff admits that the Fund operated with Plaintiff as advisor for years without issue, confirming that the alleged statements were consistent with the Fund's actual operation at the time.  *See* Opp. at 14.

Faced with this deficiency, Plaintiff attempts to establish falsity by pointing to statements made in 2024, after a dispute arose, to retroactively render WaterStone's earlier statements false at the time they were made.  Opp. at 9–10.  But later statements do not transform earlier, accurate statements into misrepresentations.  *See Athena Botanicals, LLC v. Green Earth Techs., L.L.C.*, 2024 WL 1257407, at *7 (D. Colo. Mar. 25, 2024) (court evaluates whether statement was false when made, not whether it was allegedly rendered false by subsequent events).

### C.    Plaintiff Still Fails to Allege Justifiable Reliance

Plaintiff's negligent misrepresentation claim also fails because he still does not plausibly allege his justifiable reliance on any challenged statement.  Plaintiff asserts that, had he known that WaterStone's statements were allegedly false, "he would not have agreed to become the advisor and would not have maintained the Fund at WaterStone."  Opp. at 12–13.  But his own allegations undermine that claim: he admits that he served as advisor for years without issue and continued to maintain the Fund throughout that time.  Opp. at 13–14.  Those admissions are inconsistent with any plausible inference that he relied on the challenged statements in 2017 when deciding

to enter or maintain the relationship.  Instead, he is at most complaining that years later he believes his rights were not honored.

Furthermore, WaterStone explained in its MTD that Plaintiff had no right to move the Fund to another sponsor, and so his leaving of the Fund at WaterStone cannot constitute reliance.  *See* MTD at 13.  Plaintiff responds that whether he "had the legal ability to transfer the Fund is itself a disputed issue that cannot be resolved at this stage."  Opp. at 13.  But questions of legal rights under the Agreement and the IRC are precisely the types of issues this Court can, and should, resolve at the motion to dismiss stage.  *See* MTD at 4.  And under both the Agreement and the IRC, Plaintiff had no right to move the Fund to another sponsor; at most, he could offer his advice on that point. *See* MTD at 1; *see also* 26 U.S.C. § 4966(d)(2)(A).  Thus, as a matter of law, he in no sense relied on any representations by leaving the Fund at WaterStone.

## IV.     Plaintiff Still Fails to State a Claim Under the CCPA (Count IV)

Plaintiff's CCPA claim fails because he does not plausibly allege that WaterStone engaged in a deceptive trade practice or that WaterStone's conduct had a significant public impact.

### A.     Plaintiff Still Fails to Allege Deceptive Trade Practice

Plaintiff fails to allege that WaterStone engaged in a "deceptive trade practice" by making a knowingly false representation.  Plaintiff offers only conclusory allegations that WaterStone's challenged representations "were knowingly or recklessly false."  Opp. at 14.  Those allegations are insufficient.

As discussed above, Plaintiff acknowledges that "WaterStone chose to act

consistently with [these] representations" for six years, which undermines any inference that they were false when made. Opp. at 14. A later dispute about the administration of the Fund does not transform earlier, accurate descriptions into deceptive conduct. *See* MTD at 10. Plaintiff therefore fails to plead a deceptive trade practice.

### B.    Plaintiff Still Fails to Allege Significant Public Impact

Plaintiff also fails to allege that WaterStone's conduct or challenged statements had a significant public impact. The relevant inquiry is not whether this case has attracted public attention, but whether the challenged practice significantly impacts the public at large. *See Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 150 (Colo. 2003). There is no such allegation of public impact here.

Plaintiff asserts that because "news sources are covering this lawsuit's implications for the DAF industry" and because "WaterStone sponsors funds for donors throughout Colorado and the United States," the challenged statements have a significant public impact. Opp. at 14–15. That is not the standard. *See Exam. Bd. of Pro. Home Inspectors v. Int'l Ass'n of Certified Home Inspectors*, 519 F. Supp. 3d 893, 920 (D. Colo. 2021) (explaining that it is insufficient to show that statements were merely seen or read by the public; rather, they "must have some discernible, significant impact on the public to be actionable under the CCPA"), *aff'd*, 36 F.4th 1238 (10th Cir. 2022). Here, the challenged statements concerning a single advisor and a single Fund are exactly the type of private disputes that Colorado courts have found have no significant public impact. *See Rhino Linings*, 62 P.3d at 149 ("if a wrong is private in nature, and does not affect the public, a claim is not actionable under the CCPA").

7

Thus, Plaintiff's allegations fail as a matter of law.

## V.      Declaratory Judgment Fails Absent a Viable Underlying Claim (Count V)

Because Plaintiff's substantive claims fail for the reasons above, there is no basis for declaratory relief regarding the parties' rights and obligations under the Agreement or applicable law.

Plaintiff asserts that even if his other substantive claims were dismissed, "declaratory relief remains appropriate" because an "actual controversy" exists between the parties "about their respective rights and obligations under the contract governing the Fund as well as the rights of fund advisor under the Internal Revenue Code."  Opp. at 15.  However, any dispute regarding the parties' rights and obligations under the Agreement and Internal Revenue Code is necessarily tied to Plaintiff's breach of contract and implied covenant of fair dealing claims such that if these claims were dismissed, no controversy would exist.  *See* MTD at 15.  Absent a viable underlying claim, there is no concrete dispute for the Court to resolve.  *Id.*  Declaratory relief is therefore unwarranted.

## CONCLUSION

The Court should dismiss the Complaint with prejudice.

8

DATED this 26th day of May, 2026

WILMER CUTLER PICKERING HALE AND
DORR LLP

/s/ Matthew T. Martens
**Matthew T. Martens**
matthew.martens@wilmerhale.com
2100 Pennsylvania Ave. NW
Washington, DC 20037
Tel: 202.663.6000

/s/ Timothy Perla
**Timothy Perla**
timothy.perla@wilmerhale.com
60 State Street
Boston, MA 02109
Tel: 617.526.6696

/s/ Jack R. Hodge
**Jack R. Hodge**
jack.hodge@wilmerhale.com
1225 17th Street, Suite 2600
Denver, CO 80202
Tel: 720.598.3470

*Attorneys for Defendant CHRISTIAN
COMMUNITY FOUNDATION, INC. d/b/a
WaterStone*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 26th day of May, 2026, I electronically filed a true and correct copy of the above and foregoing **DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

**Andrew Nussbaum**
**Edward A. Gleason**
**Robert J. Bucknam**
First & Fourteenth PLLC
2 N. Cascade Ave., Suite 1430
Colorado Springs, CO 80903
Phone: (719) 428-3093
Email: andrew@first-fourteenth.com
ed@first-fourteenth.com
rob@first-fourteenth.com

*Attorneys for Plaintiff PHILIP PETERSON*

WILMER CUTLER PICKERING HALE
AND DORR LLP

<u>/s/ Jack R. Hodge</u>
**Jack R. Hodge**
jack.hodge@wilmerhale.com
1225 17th Street, Suite 2600
Denver, CO 80202
Tel: 720.598.3470

*Attorney for Defendant CHRISTIAN
COMMUNITY FOUNDATION, INC. d/b/a
WaterStone*

10