**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-00179-GPG-MDB

PHILIP G. PETERSON, in his capacity as Successor Advisor to the Peterson Family
Stewardship Fund,

　　*Plaintiff,*

v.

CHRISTIAN COMMUNITY FOUNDATION, INC. d/b/a WaterStone, a Colorado
nonprofit corporation,

　　*Defendant.*

---

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL
STAY OF DISCOVERY PENDING MOTION TO DISMISS**

---

Plaintiff, Philip Peterson, responds to WaterStone's Motion for Partial Stay of
Discovery Pending Motion to Dismiss, ECF 39, filed on May 13, 2026 (Motion):

**<u>INTRODUCTION</u>**

WaterStone, which has not produced a single document to date in this lawsuit,
is now asking this Court to effectively freeze all meaningful discovery. WaterStone's
request comes after it produced no documents with its Rule 26(a)(1) disclosures, and
after it refused to communicate with or provide information to Mr. Peterson about his
late father's $21 million donor-advised fund for over two years. WaterStone itself has
told this Court that "[t]his is a simple case" with "very circumscribed" discovery. *See*
ECF 37, Scheduling Order, at § 3(b). If that is so, discovery will impose minimal bur-
den—and a stay is unwarranted. Given these facts and this District's well-established
disfavor of motions to stay, it would be unjust for this Court to grant WaterStone's
Motion.

1

For over two years, Mr. Peterson, the sole advisor to the Fund, has not been provided any information about it—including the value of its assets, what distributions have been made, or what fees have been charged to it. No one at WaterStone—a multi-billion-dollar financial institution—will even talk with Mr. Peterson about the Fund. WaterStone continues to withhold the governing agreements themselves—the very documents that are central to both parties' claims—and now asks this Court to prevent Mr. Peterson from obtaining them through discovery. Its Motion is the latest maneuver in its years-long pattern of stonewalling every attempt by Mr. Peterson to gain information about the Fund. Mr. Peterson has a statutory and contractual right to this information, and WaterStone's Motion does not provide sufficient justification for this Court to stay discovery.

## FACTUAL BACKGROUND

The facts of this case are fully set forth in Mr. Peterson's First Amended Complaint (ECF 32) (FAC) ¶¶ 1–61. In brief, Mr. Peterson's father, Gordon Peterson, established the Peterson Family Stewardship Fund (Fund) in 2005. The Fund is a donor advised fund (DAF) that WaterStone sponsors and, as of December 2023, held approximately $21 million in assets. The Fund—like all DAFs—is fundamentally a creature of the parties' contractual agreements.

Gordon Peterson, the donor-advisor, designated his wife and Mr. Peterson as the Fund's co-advisors. In 2021, Mr. Peterson became the sole advisor to the Fund after his parents' deaths. For several years, including before his parents passed away, WaterStone treated Mr. Peterson as a Fund advisor; it provided him with information about the Fund and honored his grant directions. Then, in 2024, after WaterStone's CEO was upset by Mr. Peterson, WaterStone abruptly cut off Mr. Peterson's access to the Fund, demanded that he never contact WaterStone again, and rejected his distribution requests. WaterStone has since refused to communicate with Mr. Peterson

2

or permit him to access his Fund, and it has ignored his repeated requests to move the Fund to another sponsoring organization. WaterStone's conduct violates both the contractual and the statutory obligations that it owes to Mr. Peterson as the Fund's sole advisor. Mr. Peterson responded by filing this action, alleging claims for breach of contract, breach of the implied covenant of good faith and fair dealing, negligent misrepresentation, violation of the Colorado Consumer Protection Act, and declaratory judgment.

After filing this lawsuit, Mr. Peterson promptly served his initial disclosures on WaterStone. Those disclosures included the portions of the application to create the Fund to which Mr. Peterson has access, the communications with WaterStone that he believes relevant to the parties' claims and defenses, and the materials from WaterStone's own website that bear on his claims. A month later, WaterStone served an initial disclosure certificate—and not a single document with it. The Motion now states that WaterStone will produce certain agreements and documents to Mr. Peterson—but those are documents Rule 26(a)(1)(A)(ii) already requires it to disclose. An offer to belatedly do what the Rules already compel is not a concession; it is a continuation of the same stonewalling, repackaged as cooperation.

In fact, WaterStone asks this Court to freeze discovery and delay this case for months while it continues to withhold the documents at the heart of the parties' dispute. Granting that request would prejudice Mr. Peterson, burden the Court with avoidable delay, and harm the interests of the public and of the third-party charities that have depended on the Fund for nearly two decades. The Motion should be denied.

3

**ARGUMENT**

In the District of Colorado, "a stay of discovery is generally disfavored." *See Sgaggio v. Diaz*, No. 22-cv-02043-PAB-MDB, 2023 WL 22188, at *4 (D. Colo. Jan. 3, 2023). When evaluating whether to grant a motion to stay, courts in the District of Colorado evaluate: "(1) plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice to plaintiff of a delay; (2) the burden on the defendants; (3) the convenience to the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *See String Cheese Incident, LLC v. Sylus Shows, Inc.*, 1:05-CV-01934-LTB-PA, 2006 WL 894955, at *2 (D. Colo. Mar 30, 2006). "Even in cases where defendants raise a qualified immunity defense, courts within the District of Colorado generally disfavor a stay of all discovery." *McGinn v. El Paso County*, 640 F.Supp.3d 1070, 1074 (D. Colo. 2022). WaterStone offers only to produce documents that it should have already produced as part of its initial disclosures and asks this Court to stay all other discovery. However, the *String Cheese* factors weigh against a discovery stay. This Court should deny WaterStone's request.

**I.      Plaintiff will be prejudiced by a delay.**

"While it's true that 'virtually all plaintiffs' have a 'general' interest in proceeding quickly," *McGinn*, 640 F.Supp.3d at 1076, Mr. Peterson's interest is heightened. From early 2024 to date, WaterStone has blocked every attempt that Mr. Peterson has made to gain any information about the Fund. It hasn't denied that additional documents related to the Fund exist—including the full contractual agreements that WaterStone continues to withhold, and policies and procedures explicitly incorporated into what it contends is the contract. As the sole advisor to the Fund, Mr. Peterson has a right to this information, and WaterStone's refusal to provide it has forced the parties into litigation.

4

Because WaterStone continues to withhold information, Mr. Peterson does not actually know what WaterStone is doing with the assets in the Fund. He does not know what fees are being paid from the Fund, if any distributions have been made to any organization, if the Fund's assets are being used for WaterStone's benefit instead of the charitable organizations that he seeks to send grants to, or even how much is in the Fund. As of December 2023, the Fund's assets totaled $21 million, but Mr. Peterson has lost his ability to track a single cent of it.  *See* FAC ¶ 38.

A stay of discovery would compound this harm by prolonging not only Mr. Peterson's inability to use $21 million for its intended charitable purpose but also WaterStone's ability to screen its use of the Peterson family's money from scrutiny. If WaterStone is misusing the Fund's assets—a possibility made more concerning by the total absence of charitable distributions in 2024—Mr. Peterson may never be able to recover the lost funds. The harm Mr. Peterson faces is irreparable: no amount of money damages can restore the lost charitable opportunities, humanitarian reach, or evangelical impact that the Fund was specifically established to achieve. *See* FAC ¶¶ 76–77. This factor weighs <u>strongly</u> <u>against</u> granting a stay of discovery.

## II.    A Stay of Discovery Will Inconvenience the Court.

"The District's general rule to avoid discovery stays while a dispositive motion is pending recognizes that there are 'burdens to the court and to the public in delaying, potentially for months, those cases where a [dispositive] motion is filed.'" *McGinn*, 640 F.Supp.3d at 1076 (citations omitted). Further, this *String Cheese* factor "typically disfavors a stay because the Court has a strong interest in moving matters forward." *See Waak v. City of Woodland Park*, No. 22-cv-00120-DDD-MDB, 2022 WL 17416730, at *3 (D. Colo. Dec. 5, 2022).

Given the Court's workload, motions to dismiss in this District typically pend for months. WaterStone's motion to dismiss lacks merit and should be denied. It rests on the contention that the single Application constitutes the entire contract between

the parties—a premise that, as detailed in Plaintiff's response to the motion to dismiss, ignores Plaintiff's well-pleaded allegations of additional agreements and incorporated policies and procedures that WaterStone is withholding. *See* ECF 38 at 3–5. Staying discovery in this matter will likely result in an unnecessary delay once the motion to dismiss is denied. The resulting shortened discovery timeline would increase the likelihood that the parties will need to seek extensions of time to complete discovery. This Court can minimize future discovery delays by permitting the parties to engage in discovery now. If this case is as simple as WaterStone has argued to this Court, then WaterStone would significantly economize the case, for both parties, by participating in discovery in the ordinary course. Mr. Peterson is confident that counsel for the parties will be able to work in good faith to resolve discovery disputes without bringing them to the Court's attention. This factor weighs <u>against</u> granting WaterStone's requested stay.

### III.    The Public Interest Favors Early Discovery.

As Mr. Peterson noted in his FAC and in his response to WaterStone's motion to dismiss, this case has already generated significant attention from the general public. Leading financial and local press outlets, including the Wall Street Journal, CNBC, and the Colorado Springs Gazette, have reported on this case and its  large potential impact for DAFs and the affected public.[1] Legal and financial influencers

---

[1] *See* Laura Sanders, *A Lawsuit Raises Questions About Popular Tax-Saving Charity Funds*, The Wall Street Journal, May 1, 2026, https://www.wsj.com/finance/investing/2026-tax-what-to-know-2cdf7ae3?mod=Searchresults&pos=3&page=1; *see also* Joanne Florino, *Donor Intent Watch: A Discussion on the Ownership of DAF's*, Philanthropy Roundtable, Mar. 3, 2026, https://www.philanthropyroundtable.org/donor-intent-watch-a-discussion-on-the-ownership-of-dafs/, Hayley Cuccinello, *Lawsuit over $21 million donor-advised fund highlights risks of DAF giving*, CNBC, Feb. 26, 2026, https://www.cnbc.com/2026/02/26/lawsuit-donor-advised-fund-risks.html, and Debbie Kelley, *Lawsuit filed against Christian-focused charitable fund in Colorado Springs with Tebow connection*, The Gazette, Jan. 28, 2026, https://gazette.com/2026/01/28/lawsuit-filed-against-christian-focused-charitable-fund-in-colorado-springs-with-tebow-connection/.

and advisors have also discussed the *Peterson v. WaterStone* dispute on social media and expressed concern about the chilling effect WaterStone's actions may have on the already-opaque DAF industry. *See* FAC ¶¶ 101, 108–09, 111, 113. WaterStone sponsors funds for donors throughout Colorado and the United States, and given its insistence that advisors retain no rights, every donor who relied on its representations to the contrary is subject to the same conduct alleged here. Thus, the potential impact to financial advisors, charitable donors, and charitable organizations that receive funds from donors may be significant while the public awaits the outcome of this case. This factor weighs <u>against</u> granting WaterStone's requested stay.

### IV.    Third Party Interests Weigh Against a Discovery Stay.

The third parties most affected by WaterStone's conduct are Operation Mobilization, Child Evangelism Fellowship, and the various other charities that Mr. Peterson is trying to fund. These third parties are humanitarian and evangelical organizations that depend on donations from Mr. Peterson and other donors to perform their mission work, and they safely relied on grants from the Peterson Fund for almost two decades. *See* FAC ¶ 38. Then in 2024, for the first time in the Fund's nineteen-year history, no grants were made to any charity. Now, without Mr. Peterson's promised grants, these third parties are forced to make difficult funding decisions with the limited resources available to them. These organizations—and the individuals they serve—will be directly and adversely affected by any delay in this litigation, and these delays are more likely to occur if the discovery timeline is interrupted by a stay.

WaterStone, in its Motion, did not identify any true "third parties" to this matter. The directors and employees that WaterStone argues will be burdened hold formal roles at WaterStone, such as serving on the board of directors and in executive leadership roles. In fact, these WaterStone officials may have a stronger interest in

7

seeing this matter speedily resolved rather than delayed. This factor weighs against a stay of discovery because the actual, interested third parties to this matter, the organizations that the Fund was established to fund, have been required to make do for more than two years without the once-reliable financial resources that they were promised.

## V.    Defendant's Burden is Minimal.

Compared to the factors above, the burden of discovery on WaterStone is minimal and outweighed by the other considerations. WaterStone's own motion to dismiss characterizes this dispute as turning on the terms of a single document—the 2005 Application. If that is true, then document production and discovery should be swift and straightforward. If it is not true—if, as Mr. Peterson alleges, the parties' relationship involves WaterStone's misrepresentations and additional agreements that WaterStone refuses to produce—then the need for discovery is all the more urgent. Further, WaterStone is a multi-billion dollar financial institution with ample resources to fully participate in this case, as the Court has seen. It will suffer no prejudice from participation in ordinary discovery in the usual course, which will largely concern information Mr. Peterson is entitled to as Fund advisor in all events. Overall, this factor weighs against a stay.

## CONCLUSION

Granting WaterStone's motion to stay would prejudice Mr. Peterson, increase the likelihood of wasting judicial resources through delay, and negatively impact the interests of the broader public and interested third parties. While WaterStone pegs its argument on the hope that its motion to dismiss will be granted in full, its conduct to date indicates that WaterStone expects litigation to continue. Its refusal to produce even the documents supporting its initial disclosures, and its withholding of the

governing contract documents, point to a party preparing for protracted litigation while asking this Court to prevent Mr. Peterson from doing the same.

Mr. Peterson respectfully requests that this Court deny WaterStone's Motion and allow discovery in this matter to proceed.

DATED this 28th day of May 2026.

*/s/ Andrew Nussbaum*
Andrew Nussbaum
Edward A. Gleason
Robert J. Bucknam
First & Fourteenth PLLC
2 N. Cascade Ave., Suite 1430
Colorado Springs, CO 80903
Phone: (719) 428-3093
Email: andrew@first-fourteenth.com
        ed@first-fourteenth.com
        rob@first-fourteenth.com
*Attorneys for Plaintiff Philip Peterson*

## CERTIFICATE OF SERVICE

I certify that on May 28, 2026, I filed the foregoing Response to Defendant's Motion for Partial Stay of Discovery Pending Motion to Dismiss with the Clerk of the Court using the CM/ECF system, which will send electronic notification to all counsel of record.

/s/ Thalia Mederos
Thalia Mederos, Paralegal
First & Fourteenth PLLC