**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-00179-GPG-MDB

PHILIP G. PETERSON, in his capacity as Successor Advisor to the Peterson Family
Stewardship Fund,

     *Plaintiff*,

v.

CHRISTIAN COMMUNITY FOUNDATION, INC. d/b/a WaterStone, a Colorado nonprofit
corporation,

     *Defendant*.

---

**STAGE 1 STIPULATED ORDER REGARDING PROTOCOL FOR THE EXCHANGE
OF DOCUMENTS INCLUDING ELECTRONICALLY STORED INFORMATION**

---

By agreement of Plaintiff, Philip G. Peterson (Mr. Peterson), and Defendant,

Christian Community Foundation, Inc. d/b/a WaterStone (WaterStone), the terms of this

Stage 1 Protocol will govern the process by which the Parties will collect, exchange, and

manage documents during the first stage of the above-captioned proceeding. Provided,

however, that discovery shall continue to be governed by the Federal Rules of Civil

Procedure and nothing herein shall be construed to expand or abridge any party's rights

or responsibilities under the Federal Rules of Civil Procedure.  Further, nothing herein

shall waive any right to seek discovery, nor any objections or defenses to discovery

requests.

## I.    Definitions

The Parties agree to the following definitions for purposes of this Stage 1 Protocol:

a.    **Custodian** shall mean any individual whose files are searched in response to Requests For Production.

b.    **Document** has the same meaning as that term is used in Fed. R. Civ. P. 34(a)(1)(A).

c.    **Electronically stored information** or **ESI** means and refers to electronic data, stored in or on any electronic storage medium whether physical or virtualized.

d.    **Extracted Text** is the text of a Native File, including all header, footer, and document body information, extracted to a separate file typically by an eDiscovery processing tool for electronic production to facilitate use in an eDiscovery review tool.

e.    **Load File** means an electronic file, typically created by an eDiscovery processing tool, which provides information about the interrelationships of the component parts of an electronic document production to facilitate ingestion to eDiscovery review tools.

f.    **Media** means physical devices, including but not limited to CDs, DVDs, tapes, hard drives, and flash drives on which electronic data can be stored.

g.  **Metadata** means and refers to (i) information embedded in or associated with a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File which describes the characteristics, origins, usage, and/or validity of the electronic file; or (ii) information generated automatically by the operating systems of a computer or other information technology system when a Native File is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

h.  **Native File** means ESI in the original format in which it was created and from which it can be normally accessed for viewing and modification.

i.  **OCR** means the use of an optical character recognition software application to produce searchable electronic data files of recognized text from paper documents and/or electronic image files.

## II.  Sources of Production Materials

### A.  Document Custodians

**AGREEMENT:**

The parties mutually agree that the following individuals are an initial list of document custodians in the case in connection with duly served Requests For Production:

1.  Philip Peterson

2.  Ken Harrison, WaterStone Chief Executive Officer

3.  John Mulder, WaterStone Chief Generosity Advisor

3

**DISPUTE:**

**Plaintiff** further asserts that additional custodians include any Waterstone employee with responsibility for administration of the Fund.

**B.    Search Procedure**

The Parties agree that, in response to properly served Requests For Production, they will conduct a reasonably diligent search of common document repositories used in the ordinary course of their business that, based on reasonable inquiry, are reasonably likely to contain discoverable documents in this matter.  This may include, without limitation, the following:

1.    Cloud-based document storage (e.g., Dropbox, SharePoint, OneDrive, iCloud);

2.    Archives and logs of text, instant, direct, and private messaging (e.g., Slack, Teams, Facebook, Twitter, SMS);

3.    Telephonic records, including but not limited to voicemails;

4.    On-premises or cloud-based email mailboxes and archives;

5.    On-premises or cloud-based calendaring or scheduling systems;

6.    Accounting and other financial services systems;

7.    Smartphones; and

8.    Other endpoint devices (e.g., desktop computers, laptops, and tablets).

The Parties will work in good faith to revise, if necessary, the Custodians and sources of documents from which ESI is collected and reviewed for possible production

4

so as to avoid an unduly burdensome production or retrieval of a large quantity of non-responsive ESI.

### III.    Search Terms Applicable to ESI

Plaintiff proposes the following search terms for use by all parties in extracting

ESI for review in response to properly served Requests For Production:

1.    "Gordon"

2.    "Gordon" /10 "Peterson"

3.    "Phil"

4.    "Philip"

5.    "Philip" /10 "Peterson"

6.    "Phil" /10 "Peterson"

7.    "James" /10 "Peterson"

8.     "Marisa" /10 "Peterson"

9.    ""Ruth" /10 "Peterson"

10.    "Peterson Family Stewardship Fund"

11.    "Stewardship Fund"

12.    "Peterson" /10 "Fund"

13.    "J.A. Peterson Enterprises"

14.    "09450"

15.    "10109"

16.    "19671"

17.    transfer w/10 (fund OR account OR sponsor* OR "in kind" OR "in-kind")

18.    "another sponsor*" OR "different sponsor*" OR "move the fund" OR "move the account"

19.    "facilitate" w/10 transfer

20.    Gazette OR CNBC OR "Philanthropy Roundtable" OR "Wall Street Journal"

21.    "Kenneth Ken Riedemann"

22.    "Kenneth" /10 "Riedemann"

23.    "Riedemann"

24.    "Roger Siegrist"

25.    "Roger" /10 "Siegrist"

26.    "Siegrist"

Defendant posits that it is premature to address on search terms given that Requests For Production have neither been served nor responded to and given that documents have not been extracted for review.  Further, Defendant is concerned that some of the terms will, at minimum, need revision to eliminate false positives (e.g., "Stewardship Fund").  Once Requests For Production have been exchanged and the parties have had a reasonable opportunity to estimate the volume of hits produced by test sets of search terms, Defendant agrees to consider in good faith the search terms proposed by Plaintiff and to confer in good faith to seek agreement.

**A.     Date Range for ESI Search**

Plaintiff proposes that the parties search for ESI created or modified on or after September 1, 2005 up to and including the present, except as otherwise requested or limited by a party within written discovery requests.

Defendant objects that such date range is likely to be disproportionate to the needs of the case, unduly burdensome, to capture irrelevant documents, including insofar as it would capture documents dated many years prior to Plaintiff's asserted involvement.  Once documents have been extracted and hit counts can be estimated, Defendant agrees to confer in good faith as to date range.

**IV.     Production Formats**

**A.     Format of Production**

Except as otherwise provided in this Protocol or agreed by the Parties in writing, the Parties shall produce Documents as follows:

(a) **Physical Documents.** All physical (i.e., hard-copy) documents shall be scanned and produced as single-page, Group IV, TIFF images at 300 DPI with an image load file (.OPT file and/or .LFP file) and a delimited database/metadata load file (.DAT). The database/metadata load file should contain the metadata fields listed below. All documents are to be provided with per document searchable text (.TXT) files that contain full text extraction. In the event a document is scanned into TIFF format, the text file should contain that document's OCR text. The parties agree that creating families or metadata that does not exist as kept in the ordinary course of business for hard copy documents is not required unless identified below.

(b) **Images.** Each Document shall be produced as single-page, Group IV black-and-white TIFF images at 300 DPI, except that any Document containing color shall be produced as a single-page color JPEG where color is reasonably necessary to interpret the Document. Upon written request by another Party, Parties may request that a document be re-produced in color, and the Party receiving the request shall do so. Image files shall be named the same as the starting bates number for each document. Each TIFF image shall be endorsed with bates numbers that increment by one for each page.

(c) **Text.** For each Document that originated in electronic form, the producing Party shall provide a single multi-page, document-level extracted-text file reflecting the full text of the Native File. For Documents originating in paper form, in image-only form, redacted, or for which extracted text is unavailable, the producing Party shall provide OCR text. Text shall be delivered as separate document-level .TXT files referenced in the Load File, not embedded in the image files. Each TIFF image shall be endorsed with bates numbers that increment by one for each page. Each text file shall be named as the starting bates number for each document.

(d) Native Files. The following shall be produced in Native File format rather than as images: spreadsheet files (e.g., Excel); presentation files (e.g., PowerPoint); Access files; CSV files; audio and video files; and any Document whose imaged form would not reasonably convey its content. A Party may request Native Files for any other Document, and the producing Party shall not unreasonably withhold them. Any ESI produced in native format shall also have a TIFF placeholder bearing the legend

8

"Produced in Native File Format." The TIFF image shall be endorsed with a sequential bates number and the produced native file named to match this bates number. The metadata load file shall contain a link to the produced native file via data values called "Native Link." The Native Link values should contain the full directory path and file name of the native file as contained in the produced media.

To the extent Excel spreadsheets contain information subject to a claim of privilege, they shall be produced in the form of a redacted .TIFF image. The Parties agree to meet and confer about native redaction if TIFF redaction would render the document not reasonably usable.

(e) **System Files**. ESI productions may be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology as it exists at the time of de-NISTing. Other file types may be added to the list of excluded files by agreement of the Parties.

(f) **Use of Artificial Intelligence Technology**. The Parties agree that a Receiving Party may use artificial-intelligence software and services ("AI Technology") to aid in the processing, review and analysis of Confidential Discovery Material in this litigation, provided, however, that any such AI Technology must protect the confidentiality of the information as required by this Stipulation and Order.

1. No Receiving Party may input, upload or otherwise share Confidential Discovery Material with any publicly-accessible Generative Artificial Intelligence tool and/or Large Language Model (collectively, a "Public GenAI tool") (e.g., ChatGPT, Anthropic, or similar AI systems). If a Receiving Party

9

inputs, uploads, or otherwise shares Confidential Discovery Material with a
Public GenAI tool it shall constitute disclosure of Confidential Discovery
Material to a Non-Party not authorized in Section [    ].

2.  If a Receiving Party desires to input, upload, or otherwise share Confidential
Discovery Material with any non-publicly accessible GenAI tool (a "Closed
GenAI tool"), the Receiving Party shall represent that it has undertaken the
necessary steps to confirm that Confidential Discovery Material will (i) not be
used to train, fine-tune, or otherwise enhance the Closed GenAI tool(s) it
intends to use other than for purposes of this action; (ii) not be disclosed to
any unauthorized third party, including without limitation other users or
developers of the Closed GenAI tool; and (iii) be capable of return or
destruction of the Protected Material, and certification of such, according to
the terms of this Order.

(g) **Searchability and integrity.** All productions shall be text-searchable, shall
preserve Document-level unitization (i.e., distinct documents should not be merged into
a single record, and a single document should not be split into multiple records), and
shall not be altered except for permitted Bates branding, confidentiality designations,
and privilege redactions as set forth in this Protocol. Documents may be redacted to
exclude sensitive personally identifiable information.

The organizational structure of the documents should be captured during
collection and provided during production. This includes such information as the box,
Redweld, or folder filing system in which the documents were maintained.

## B.    De-Duplication

Removal of duplicate documents may be done for exact duplicate documents and must be done across custodians and sources. Near-duplicate documents shall be produced rather than removed. Where exact-duplicate Documents are removed across custodians and sources, the producing Party shall identify in the AllCustodians field every custodian and source in whose files a copy of the Document was located. The custodian associated with the first-processed copy of a document shall be considered the primary custodian for that document and will be populated in the Custodian field. De-duplication shall not be used to suppress the fact that multiple custodians possessed a Document.

If there are handwritten notes, or any other markings, on a document, it shall not be considered a duplicate. Any document that contains an alteration, marking on, or addition to the original document shall be treated as a distinct version and be produced as such. These alterations include, but are not limited to, handwritten notes, electronic notes/tabs, edits, highlighting, or redlining.

## C.    Document Families and De-Duplication

(a) Families. Parent Documents and their attachments, embedded files, and other related component parts (a "Document Family") shall be produced together, with consecutive bates numbering and populated BegAttach/EndAttach fields. A Party shall not withhold a member of a Document Family solely because that member, standing alone, is non-responsive, except where withheld for privilege and logged accordingly. To the extent a document is part of a "document family," with a combination of responsive,

11

privileged, and/or non-responsive documents: (i) the privileged documents will be represented in the production with a placeholder TIFF image that bears the legend "Document Withheld as Privileged;" and (ii) the non-responsive documents will be produced as set out above. The TIFF image(s) shall be endorsed with a sequential bates number.

(b) Threading. Email threading may be used to identify the most-inclusive message in a thread, but a Party shall produce all unique lesser-included messages and any unique attachments; suppression of lesser-included messages is not permitted absent agreement.

**D.      Messaging, Chat, and Voicemail**

(a) Short-message and chat data. ESI from text, instant, direct, or private messaging applications (e.g., SMS/MMS, Slack, Teams, and the platforms identified above) shall be produced in Relativity Short Message Format (RSMF) or another reasonably usable format that preserves participant identifiers, message content, timestamps, and any attachments or embedded media.

(b) Voicemail and audio. Voicemails and other audio recordings shall be produced as Native File audio with available Metadata (e.g., date/time, parties, duration). A Party need not transcribe audio, but if a transcript exists in the ordinary course, it shall be produced.

(c) Hyperlinked and cloud-stored files ("modern attachments"). Where a Document contains a hyperlink to a file stored in a cloud repository (e.g., SharePoint, OneDrive, Dropbox, iCloud, Google Drive) and that linked file is responsive and within a

12

Party's possession, custody, or control, the Parties shall meet and confer in good faith, with all objections preserved, regarding a reasonable method to identify, collect, and associate the then-current or contemporaneous version of the linked file with the parent Document.

### E.     Metadata

Each production shall be accompanied by a Load File consisting of (i) a delimited data file (Concordance/.DAT format, using standard Concordance delimiters) containing the Metadata fields set forth in the table below, and (ii) an image-cross-reference file (Opticon/.OPT format) correlating each bates-numbered image to its Document.

| Field Name | Description | Required |
| --- | --- | --- |
| BEGBATES | "Beginning bates" – First bates number of each document | Hard copy/ Electronic files |
| ENDBATES | Last bates number of each document | Hard copy/ Electronic files |
| BEGATTACH | First bates number of each attachment range | Hard copy/ Electronic files |
| ENDATTACH | Last bates number of each attachment range | Hard copy/ Electronic files |
| PARENTBATES | Beg bates of parent document | Hard copy/ Electronic files |
| ATTACHMENT | Beg bates of all attachments delimited by semicolon (if any) | Hard copy/ Electronic files |

13

| ALLCUSTODIAN | Name of all custodians | Hard copy/ Electronic files |
| --- | --- | --- |
| FROM | Email sender information | Electronic files |
| TO | Email recipient information | Electronic files |
| CC | "Carbon copied" email recipient information | Electronic files |
| BCC | "Blind carbon copied" email recipient information | Electronic files |
| SUBJECT | Email subject information | Electronic files |
| DATESENT | Email date sent information | Electronic files |
| TIMESENT | Email time sent information | Electronic files |
| DATERCVD | Email date received information | Electronic files |
| TIMERCVD | Email time received information | Electronic files |
| FILEEXT | Original file extension information | Electronic files |
| AUTHOR | Author information | Electronic files |
| CREATEDATE | Date created information for file | Electronic files |
| CREATETIME | Time created information for file | Electronic files |
| DATELASTMOD | Date last modified information | Electronic files |
| TIMELASTMOD | Time last modified information | Electronic files |
| ALLFILENAMES | All file names for each instance of a file | Electronic files |
| DUPFILENAME | File names of any duplicative documents | Electronic files |
| FILELENGTH | File size in bytes | Electronic files |

| PGCOUNT | Document page count | Hard copy/ Electronic files |
|---|---|---|
| DOCTYPE | Document type (EG, Excel, MS Word, Hard Copy, etc. | Hard copy/ Electronic files |
| FAMDATE | Date of parent document | Electronic files |
| FAMTIME | Time of parent document | Electronic files |
| TIMEZONE | Time zone the data was set to when processed | Electronic files |
| ALLPATH | All file paths for each instance of a document | Electronic files |
| MD5HASH | MD5 hash value (unique file signature) | Electronic files |
| CONFIDENTIAL | Confidential labelling of a document | Hard copy/ Electronic files |
| REDACTED | Yes/No values for documents with redactions | Hard copy/ Electronic files |
| NATIVEPATH | Path for any native files produced | Electronic files |
| TEXTPATH | Path for any text files produced | Hard copy/ Electronic files |

## F.     Bates Numbering

Bates numbers and any confidentiality designation should be electronically branded on each page or image of ESI produced in accordance with this Stage 1 Protocol. For documents produced in native format, the original file name and the bates

number for each native file shall be produced, and the native files shall be named the same as the starting bates number of that document or file.

### G.     Privilege Redactions

Each privilege redaction on a document shall be completed using black or colored boxes that contain the words "Redacted for Privilege" on each page of the redacted document. The redacted image file should be produced along with OCR text of the redacted file. Documents shall not contain the text which has been redacted. The original unredacted native file shall be preserved pending conclusion of the action. If metadata displayed in the imaged document was redacted, then that metadata should be excluded from the load file.  The deadline for the production of privilege logs with regard to documents withheld on the basis of privileges of any type shall be 30 days prior to the deadline for the completion of fact discovery.

### H.     Third Party Documents

Any third party that is subpoenaed in Stage 1 of this action's discovery shall be requested to comply with the production specifications set forth in this Stage 1 Protocol. Accordingly, this Stage 1 Protocol shall be attached to any subpoena issued in this action.

Any Party that issues a non-party subpoena (Issuing Party) has no obligation to incur expenses in conducting additional processing of documents received in response to such a subpoena prior to producing those documents to other Parties to the lawsuit, other than ensuring that the documents are bates numbered.

16

## V.      Use of ESI in Litigation

This Stage 1 Protocol does not address, limit, or determine the relevance, discoverability, or admission into evidence of any ESI or document. Further, this Stage 1 Protocol may not be construed or interpreted as requiring the production of documents captured by any search if that document is, reasonably and in good faith, deemed non-responsive to the requesting Party's request. The Parties do not waive any objections as to the production, discoverability, or confidentiality of documents subject to this protocol.

The Parties agree that certain ESI is not reasonably accessible under Federal Rule of Civil Procedure 26(b)(2)(B), including:

a) Shadowed, damaged, residual, slack, fragmented data only accessible by forensics and "unallocated" space on hard drives.

b) Data stored in random access memory ("RAM") or other ephemeral data that is difficult to preserve without disabling operating systems.

c) On-line access data such as temporary internet files, history, cache files, cookies, and the like, wherever located.

d) Data stored on photocopiers, scanners, and fax machines.

e) Computer programs, operating systems, computer activity logs, programming notes or instructions, batch files, system files, and miscellaneous files or file fragments.

f) The Parties reserve the right to assert that other categories of ESI are not reasonably accessible under Federal Rule of Civil Procedure 26(b)(2)(B).

17

## VI.    Modification

This Stage 1 Protocol may be modified by agreement of the Parties or by the Court for good cause shown.

DATED June 29, 2026.

*/s/Andrew Nussbaum*
Andrew Nussbaum
Edward A. Gleason
Robert J. Bucknam
First & Fourteenth PLLC
2 N. Cascade Ave., Suite 1430
Colorado Springs, CO 80903
Phone: (719) 428-3093
Email: andrew@first-fourteenth.com
      ed@first-fourteenth.com
      rob@first-fourteenth.com
*Attorneys for Plaintiff Philip Peterson*


*/s/ Timothy Perla*
Timothy Perla
timothy.perla@wilmerhale.com
60 State Street
Boston, MA 02109
Tel: 617.526.6696

*Attorney for Defendant CHRISTIAN COMMUNITY FOUNDATION, INC. d/b/a WaterStone*